GEORGE A. ROESEL AND PATRICIA M. ROESEL, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

DOROTHY H. MARBUT, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 374–68, 375–68. Filed April 7, 1971.

*James E. Johnson, Jr.*, and *J. Larry Broyles*, for the petitioners. *David S. Meisel*, for the respondent.

18

OPINION

Milling, a qualifying subchapter S corporation, had undistributed taxable income for years prior to its taxable year ended February 28, 1963, which had been previously taxed to its shareholders. On the last day of such taxable year it initiated certain steps in an attempt to distribute to its shareholders substantially all of such previously taxed income. On February 28, 1963, it issued checks in the amount of $345,000 to them. On March 1, 1963, they issued their checks to Milling in the amount of $117,500 and received debentures and short-term notes from Milling in that amount. A similar procedure was followed around the end of Milling's taxable year ended February 29, 1964, although at such time Milling did not attempt to effect any distribution of previously taxed income. On February 29, 1964, Milling issued checks to its shareholders in the total amount of $165,745. On or about March 1, 1964, they issued their checks to Milling in the total amount of $69,505 and received debentures and short-term notes from Milling in that amount.

The basic question presented for our decision is whether Milling's issuance of checks on February 28, 1963, and February 29, 1964, constituted in full money distributions at those times or whether, as determined by the respondent, the above transactions constituted in substance money distributions only to the extent of $227,500 and $96,240, respectively, and property distributions of $117,500 on March 1, 1963, and $69,505 on March 1, 1964.

At the outset it is helpful to outline the statutory and regulatory framework in which the present controversy arises.

Subchapter S was added to the Internal Revenue Code of 1954 by the Technical Amendments Act of 1958.[6] Under section 1373 of the

[6] The purpose of subch. S, as stated in S. Rept. No. 1983, 85th Cong., 2d Sess., pp. 87–88, was as follows:

"To permit shareholders in small-business corporations, in lieu of payment of the corporate tax, to elect to be taxed directly on the corporation's earnings, your committee has added a new subchapter (subch. S, secs. 1371–1377) to the code. Where the tax treatment provided by this subchapter is elected, the shareholders include in their own income for tax purposes the current taxable income of the corporation, both the portion which is distributed and that which is not. * * *

"Where a shareholder has been taxed on corporate earnings which were not at that time distributed, and then the corporation in a subsequent year distributes these earnings to such shareholders no further tax is required from the shareholder at that time, since these earnings have already been taxed to him in a prior year. Once all such earnings have been distributed, if further distributions are then made, and the corporation had earnings and profits before it elected this special tax treatment, then such distributions are to be taxed to the shareholders in the same manner as ordinary dividends from corporations."

**22**

Code,[7] the shareholders of an electing subchapter S corporation are required to include in their income the amount they would have received *as dividends* if the corporation's undistributed taxable income had been distributed pro rata to them on the last day of the corporation's taxable year. During the years before us an electing corporation's undistributed taxable income for any year consisted of its taxable income, computed without regard to certain deductions, less the amount of money distributed during such year *as dividends* within the meaning of section 316 (a) (2) of the Code.[8] Thus, the shareholders of an electing subchapter S corporation are required to include in their income their prorata shares of the corporation's taxable income to the extent of the corporation's current earnings and profits regardless of whether such income is distributed to them in money or retained by the corporation. And, under sections 312 and 1377 of the Code [9] the corporation's current earnings and profits are correspondingly reduced by the amounts of money distributed to its shareholders and by the amounts included by them as constructively received.

---

[7] As applicable to the years before us, sec. 1373 provides in part as follows:

SEC. 1373. CORPORATION UNDISTRIBUTED TAXABLE INCOME TAXED TO SHAREHOLDERS.

(a) GENERAL RULE.—The undistributed taxable income of an electing small business corporation for any taxable year shall be included in the gross income of the shareholders of such corporation in the manner and to the extent set forth in this section.

(b) AMOUNT INCLUDED IN GROSS INCOME.—Each person who is a shareholder of an electing small business corporation on the last day of a taxable year of such corporation shall include in his gross income, for his taxable year in which or with which the taxable year of the corporation ends, the amount he would have received as a dividend, if on such last day there had been distributed pro rata to its shareholders by such corporation an amount equal to the corporation's undistributed taxable income for the corporation's taxable year. For purposes of this chapter, the amount so included shall be treated as an amount distributed as a dividend on the last day of the taxable year of the corporation.

(c) UNDISTRIBUTED TAXABLE INCOME DEFINED.—For purposes of this section, the term "undistributed taxable income" means taxable income (computed as provided in subsection (d)) minus the amount of money distributed as dividends during the taxable year, to the extent that any such amount is a distribution out of earnings and profits of the taxable year as specified in section 316(a)(2).

[8] Sec. 316 provides in part as follows:

SEC. 316. DIVIDEND DEFINED.

(a) GENERAL RULE.—For purposes of this subtitle, the term "dividend" means any distribution of property made by a corporation to its shareholders—

(1) out of its earnings and profits accumulated after February 28, 1913, or

(2) out of its earnings and profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.

Except as otherwise provided in this subtitle, every distribution is made out of earnings and profits to the extent thereof, and from the most recently accumulated earnings and profits. To the extent that any distribution is, under any provision of this subchapter, treated as a distribution of property to which section 301 applies, such distribution shall be treated as a distribution of property for purposes of this subsection.

[9] Secs. 312 and 1377 provide in part as follows:

SEC. 312. EFFECT ON EARNINGS AND PROFITS.

(a) GENERAL RULE.—Except as otherwise provided in this section, on the distribution of property by a corporation with respect to its stock, the earnings and profits of the corporation (to the extent thereof) shall be decreased by the sum of—

Under section 1375(d) of the Code,[10] an electing corporation may distribute to any shareholder such shareholder's net share of the corporation's undistributed taxable income which has been included in his income in prior taxable years. Such a distribution is not treated as a dividend and the earnings and profits of the corporation are not reduced thereby.

Under various sections of the Income Tax Regulations promulgated with respect to the provisions of subchapter S, the respondent has adopted the position that distributions of property other than money by an electing corporation are to be governed by principles applicable to corporate distributions in general. Thus, sections 1.1372–1(c)(2) and 1.1372–1(c)(7) of the regulations[11] provide that property distributions are to be governed by section 301 and section 316 of the Code. Section 1.1373–1 of the regulations[12] provides that an electing corporation's current earnings and profits shall first be allocated to actual

---

(1) the amount of money,

(2) the principal amount of the obligations of such corporation, and

(3) the adjusted basis of the other property, so distributed.

SEC. 1377. SPECIAL RULES APPLICABLE TO EARNINGS AND PROFITS OF ELECTING SMALL BUSINESS CORPORATIONS.

(a) REDUCTION FOR UNDISTRIBUTED TAXABLE INCOME.—The accumulated earnings and profits of an electing small business corporation as of the close of its taxable year shall be reduced to the extent that its undistributed taxable income for such year is required to be included in the gross income of the shareholders of such corporation under section 1373(b).

[10] Sec. 1375(d) provides in part as follows:

SEC. 1375. SPECIAL RULES APPLICABLE TO DISTRIBUTIONS OF ELECTING SMALL BUSINESS CORPORATIONS

(d) DISTRIBUTIONS OF UNDISTRIBUTED TAXABLE INCOME PREVIOUSLY TAXED TO SHAREHOLDERS.—

(1) DISTRIBUTIONS NOT CONSIDERED AS DIVIDENDS.—An electing small business corporation may distribute, in accordance with regulations prescribed by the Secretary or his delegate, to any shareholder all or any portion of the shareholder's net share of the corporation's undistributed taxable income for taxable years prior to the taxable year in which such distribution is made. Any such distribution shall, for purposes of this chapter, be considered a distribution which is not a dividend, but the earnings and profits of the corporation shall not be reduced by reason of any such distribution.

[11] As applicable to the years before us, secs. 1.1372–1(c)(2) and 1.1372–1(c)(7) of the regulations provide as follows:

(2) Section 301, relating to distributions of property, applies to distributions by an electing small business corporation in the same manner that it would apply had no election been made;

\* \* \* \* \* \* \*

(7) Section 316, relating to the definition of a dividend, applies to distributions by an electing small business corporation except as provided in section 1375(d)(1), relating to distributions of previously taxed income, \* \* \* (see paragraphs (d) and (e) of § 1.1373–1 for rules relating to allocation of current earnings and profits to distributions during the taxable year) \* \* \*

[12] As applicable to the years before us, sec. 1.1373–1 of the regulations provides in part as follows:

Sec. 1.1373–1. Corporation undistributed taxable income taxed to shareholders.—

\* \* \* \* \* \* \*

(d) *Determination of dividends in money out of earnings and profits of the taxable year.* In applying section 316(a) to distributions by an electing small business corporation, earnings and profits of the taxable year are first allocated to actual distributions of money made

Footnotes continued on following page.

24

distributions of money and that any remaining earnings and profits shall then be allocated ratably between actual distributions of property and the constructive distribution of undistributed taxable income. Under section 1.1375–4 of the regulations [13] distributions of property other than money do not qualify as distributions of undistributed taxable income which has been previously taxed to the shareholders. Such section provides that distributions of previously taxed income may occur only when, and to the extent that, an electing corporation makes money distributions in excess of its current earnings and profits.

Under the above sections of the Code and the regulations it becomes evident that: (1) Because an electing corporation's taxable income

Footnotes continued from previous page.
during such taxable year which are not in exchange for stock. Therefore, such distributions of money are dividends from earnings and profits of the taxable year to the extent of such earnings and profits even though there may be distributions of property other than money during such taxable year or constructive distributions pursuant to section 1373(b) at the end of such taxable year. If such distributions of money made during the taxable year exceed the earnings and profits of such year, then that proportion of each such distribution which the total of the earnings and profits of the year bears to the total of such distributions made during the year shall be regarded as out of the earnings and profits of that year. For purposes of section 1373(c) a distribution of money does not include a distribution of an obligation of the corporation or a distribution of property other than money in satisfaction of a dividend declared in money. * * *

(e) *Dividend resulting from constructive distribution of undistributed taxable income.* The amount which would be treated as a dividend if the undistributed taxable income were distributed on the last day of the taxable year is determined in accordance with section 316. In determining the extent to which distributions of an electing small business corporation are out of earnings and profits of the taxable year, the following rules apply :

(1) Earnings and profits of the taxable year are first allocated to the actual distributions of money described in paragraph (d) of this section.

(2) The excess of such earnings and profits over such actual distributions of money is allocated ratably to the constructive distribution of undistributed taxable income and actual distributions of property other than money (taken into account at fair market value for purposes of this allocation) which are not in exchange for stock, * * *

[13] As applicable to the years before us, sec. 1.1375–4 of the regulations provides in part as follows :

Sec. 1.1375–4. Distributions of previously taxed income.—

(a) *In general.* Under section 1375(d)(1), a distribution by an electing small business corporation to a shareholder of all or any portion of his net share of previously taxed income is considered a distribution which is not a dividend. Such a distribution reduces the basis of the shareholder's stock in the corporation in accordance with section 301(c)(2), and, if it exceeds such basis, is subject to the provisions of section 301(c)(3). The earnings and profits of the corporation are not reduced by reason of such a distribution. If an election is terminated under section 1372(e), the corporation may not, during the first taxable year to which the termination applies or during any subsequent taxable year, distribute previously taxed income of taxable years prior to the termination as a nondividend distribution pursuant to this section.

(b) *Source of distribution.* Except as provided in paragraph (c) of this section, any actual distribution of money by an electing small business corporation to a shareholder which, but for the operation of this section, would be a dividend out of accumulated earnings and profits shall be considered a distribution of previously taxed income to the extent of the shareholder's net share of previously taxed income immediately before the distribution. Thus, a distribution of property other than money or a distribution in exchange for stock, or a constructive distribution under section 1373(b), is never a distribution of previously taxed income. Since current earnings and profits are first applied to distributions of money which are not in exchange for stock (see paragraphs (d) and (e) of § 1.1373–1), a distribution of previously taxed income may occur only if during its taxable year the corporation makes such money distributions in excess of its earnings and profits for such taxable year.

is reduced only by money distributions, in order to avoid having undistributed taxable income such corporation must currently distribute its taxable income in money; (2) once a corporation has undistributed taxable income which has been previously taxed to its shareholders such income may be distributed to them without dividend treatment only if, and to the extent that, the corporation makes money distributions in excess of its current taxable income; and (3) distributions of property other than money are taxable as dividends, first to the extent of their ratable share of the corporation's current earnings and profits, and then to the extent of such corporation's accumulated earnings and profits.

The petitioners have not raised any issue as to the validity of the respondent's regulations and we accordingly express no opinion with regard thereto. Cf. DeTreville v. United States, (D.S.C.) 312 F. Supp. 362, on appeal (C.A. 4). Rather, it is petitioners' position that the issuance by Milling of checks in the amounts of $345,000 on February 28, 1963, and $165,745 on February 29, 1964, constituted, in substance as well as in form, money distributions at those times; that the distribution on February 28, 1963, met the requirements of section 1.1375–4 of the respondent's regulations; and that, therefore, the amount distributed on February 28, 1963, in excess of Milling's taxable income for its taxable year ended on that date constituted a nondividend distribution of previously taxed income.

It is the respondent's position that the substance of the transactions involved must prevail over their form for tax purposes; that in substance Milling's issuance of checks on February 28, 1963, and February 29, 1964, in the respective amounts of $345,000 and $165,745 constituted distributions of money at those times only to the extent of $227,500 and $96,240, respectively, and that this was followed by distributions of property consisting of notes and debentures on March 1, 1963, and March 1, 1964, in the respective amounts of $117,500 and $69,505; and that, therefore, a portion of Milling's earnings and profits for its taxable year ended February 29, 1964, is properly allocable to the property distributed to petitioners on March 1, 1963, with the result that to such extent the petitioners received taxable dividends from Milling during their taxable years 1963.[14]

We agree with the respondent that the economic substance of a transaction must govern for tax purposes rather than the time sequence

---

[14] It should be noted that the respondent, on brief, concedes that the notes and debentures in question were valid and that they did not constitute a second class of stock. Moreover, by determining that the distributions of notes and debentures were taxable only to the extent of an allocable portion of Milling's earnings and profits for its taxable year ended Feb. 29, 1964, he, in effect, determined that Milling had no accumulated earnings and profits at that time. In any event, in view of Milling's operation as a partnership prior to its incorporation and its subsequent operating history, it seems clear that it did not have any accumulated earnings and profits during the years before us.

or form in which such transaction is cast. *Gregory* v. *Helvering*, 293 U.S. 465. And it is well established that where a series of closely related steps are taken pursuant to a plan to achieve an intended result the transaction must be viewed as an integrated whole for tax purposes. *Redwing Carriers, Inc.* v. *Tomlinson*, (C.A. 5) 399 F. 2d 652, and cases cited therein.

At the trial the petitioners adduced testimony to the effect that Milling did not know the extent to which its shareholders would make loans to it at the time its distributions were made, that such loans were voluntarily made by the shareholders, and that the loans were made by the shareholders because the notes and debentures represented sound investments. Be this as it may, the record as a whole convinces us that the purported loans by the shareholders were made pursuant to a general understanding between Milling and its shareholders. The conversations which were had between Milling's president or comptroller and the shareholders with respect to the purported loans, the degree of correspondence between the book overdrafts created by Milling's distributions and the amounts purportedly loaned back by its shareholders, the close proximity in time of the purported loans and the issuance of checks by Milling, and the correlation between the amounts purportedly loaned by each shareholder and his interest in Milling, all serve to establish that the purported distributions and loans were but parts of interrelated transactions which must be viewed as such for tax purposes.

Our view of the substance of the transactions in question, however, differs somewhat from that urged by the respondent. In our opinion, the distributions by Milling on February 28, 1963, and February 29, 1964, constituted, in substance, distributions on such dates of cash in the respective amounts of $227,500 and $96,240 and property consisting of notes and debentures in the respective amounts of $117,500 and $69,505. It is true, of course, that the notes and debentures were not formally issued by Milling until the dates following the dates upon which its checks were issued. However, it is clear that some portion of each check was issued pursuant to an understanding that notes and debentures would be substituted therefor. Under the circumstances, in substance, the notes and debentures were issued on February 28, 1963, and February 29, 1964. Once an integrated transaction is to be viewed as such for tax purposes, its component parts do not admit of separation. *Redwing Carriers* v. *Tomlinson, supra*, and cases cited therein.

In view of the above, it is our conclusion that the notes and debentures received by petitioners dated March 1, 1963, did not constitute nondividend distributions of undistributed but previously taxed income. Such notes and debentures are taxable to them in their taxable

years 1963 but only to the extent of a ratable portion of Milling's earnings and profits for its taxable year ended February 28, 1963, rather than a ratable portion of Milling's earnings and profits for its taxable year ended February 29, 1964, as determined by the respondent. The notes and debentures received by petitioner Roesel dated March 1, 1964, are taxable to her in her taxable year 1964 to the extent of a ratable portion of Milling's earnings and profits for its taxable year ended February 29, 1964. To the extent that the notes and debentures received by petitioners are not deemed to be out of Milling's earnings and profits, the basis of petitioners' respective stock in Milling will be reduced pursuant to the provisions of section 301 of the Code.

*Decisions will be entered under Rule 50.*