Marie L. DeTREVILLE, Appellee,

v.

UNITED STATES of America, Appellant.

Marie L. DeTREVILLE, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 15156, 15157.

United States Court of Appeals, Fourth Circuit.

Argued May 14, 1971.

Decided Aug. 3, 1971.

William L. Goldman, Atty., Dept. of Justice (Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Thomas L. Stapleton, Attys., Dept. of Justice, Joseph O. Rogers, Jr., U. S. Atty., and Wistar D. Stuckey, Asst. U. S. Atty., on brief) for the United States.

Gene V. Pruet, Columbia, S. C. (Cooper, Gary, Nexsen & Pruet, Columbia, S. C., on brief), for Marie L. DeTreville.

Before SOBELOFF, Senior Circuit Judge, and WINTER and CRAVEN, Circuit Judges.

SOBELOFF, Senior Circuit Judge:

These appeals involve a claim for refund of federal income taxes for the year 1960. The District Court entered judgment in favor of the taxpayer for about two-thirds of the recovery sought.[1]

Neither party is satisfied and each seeks to improve his lot by appealing. We hold that the Government's appeal should prevail and the taxpayer's should not.

Marie L. DeTreville, the taxpayer, is a stockholder in Forest Land Company, Inc., a South Carolina corporation organized in 1931. At the end of 1958, the stockholders elected to qualify the corporation as a "small business corporation" under Subchapter S of the Internal Revenue Code, 26 U.S.C. §§ 1371–78. The effect of such an election is to eliminate the corporation's income tax and to cause the corporation's income to be taxed proportionately to its shareholders, regardless of whether the income is distributed or retained by the company. See 26 U.S.C. § 1373. Taxable income retained by the corporation may then be distributed tax-free in subsequent years. 26 U.S.C. § 1375(d).

On December 16, 1960, Forest Land Company and its shareholders formed the Mount Vernon Life Insurance Company. Forest Land Company received 13,756 shares of capital stock in the insurance company, valued at $22.50 per share, in return for certain real estate properties. On December 31 of that year the corporation made a distribution to its stockholders of checks totalling $212,868.64. Less than a week later each stockholder purchased from the company shares of insurance stock equal in value to his share of the previous cash distribution.

The Government argued, and the District Court held, that the transactions

---

1. DeTreville v. United States, 312 F.Supp. 362 (D.S.C.1970).

between the company and its shareholders amounted to a property distribution rather than a distribution of cash. For reasons that will be elaborated below, the Government also argued that as a property distribution the entire distribution was taxable to the shareholders as a dividend. The District Court, however, ruling invalid Treasury Regulation § 1.-1375–4(b), held the distribution only partially taxable and granted judgment for the taxpayer in the amount of $6,-413.33 plus interest.

We affirm the conclusion of the District Court that the 1960 distribution was one of property rather than money, but vacate the judgment, as we conclude that the challenged Treasury Regulation is not invalid.

### I.  *The Property Distribution*

As will be discussed at some length in part II of this opinion, property distributions by Subchapter S corporations are taxed differently from money distributions. If the December 31 distribution was a money distribution, there is no question that the taxpayer should prevail and recover the full refund which she is seeking. If the distribution was one of property, however, she is entitled to no refund unless, as the District Court held, Treasury Regulation § 1.1375–4(b) is invalid, in which case the taxpayer would be entitled to the partial refund awarded by the District Court.

There is no question that checks were issued to the shareholders on December 31, 1960, or that the insurance company stock was not "sold" to the stockholders until January 6, 1961. However, the reasoning of the District Court was founded on the principle established by Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 65 S. Ct. 707, 89 L.Ed. 981 (1945), and Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935), that issues of taxation are to be governed by the substance rather than the form of the underlying transactions.

The District Court found that the corporation and its stockholders originally intended to distribute the insurance company stock directly to the stockholders. It was only after discovering that a direct property distribution would not be tax-free that the cash distribution and sale procedure was worked out. As the first step, on December 31, 1960, checks totalling $212,868.64 were made out to the shareholders. The company's bank balance at the time was $4,209.56.

The check made out to the taxpayer was in the amount of $17,631.34. On January 6, 1961, she purchased 784 shares of the insurance stock from Forest Land Company for $17,640. The other stockholders also purchased proportionate amounts of stock corresponding to their "cash" dividends. In each case the company's check and the stockholder's check were deposited on the same day, creating offsetting transactions. Of further note is the fact that the insurance company stock certificates were dated December 30, 1960, the day preceding the date of issue of the distribution checks.

These facts amply support the finding of the District Court that in substance this transaction was a distribution of property, insurance company stock, to Forest Land Company's stockholders. The checks, amounting to fifty times the bank balance available to pay them, served only to conceal the true nature of the transaction. Testimony that the stockholders were not bound to purchase the stock and that funds could easily have been obtained to cover the checks was quite properly accorded little weight. Overwhelming that evidence is the fact that every stockholder did purchase a proportionate amount of stock, as must have been anticipated considering the woeful insufficiency of the company's bank account had any of the checks been presented for payment.

### II.  *The Treasury Regulation*

Subchapter S was intended to allow certain small business corporations to be taxed almost as if they were partner-

ships rather than corporations—"it permits businesses to select the form of business organization desired, without the necessity of taking into account major differences in tax consequences."[2] Thus, the primary benefit offered by Subchapter S is a means to avoid the taxation of income both to the corporation as a separate entity and again to the stockholders as dividends when distributed.

A first principle critical to an understanding of the operation of Subchapter S is that when any corporation, including a Subchapter S corporation, makes a distribution of its earnings and profits to its stockholders, the distribution is taxed to the stockholders as a dividend. 26 U.S.C. § 316(a). Accordingly, under Subchapter S, money distributions are taxable to shareholders as dividends to the extent of the current year's earnings and profits. However, to the extent that the taxable income of a Subchapter S corporation exceeds money distributions for the current year, the difference is also taxed directly to the shareholders at their personal rates rather than being taxed to the corporation as a separate entity. 26 U.S.C. § 1373(b)[3] This undistributed taxable income is then treated as if it had been distributed and paid back in by the sharehold-

ers as a contribution to capital—the company's earnings and profits are reduced by the amount of undistributed taxable income (26 U.S.C. § 1377(a))[4], and the basis of each shareholder's stock is increased by an amount equal to his proportionate share of undistributed taxable income. 26 U.S.C. § 1376(a)[5]

It is the transfer of undistributed taxable income from the earnings and profits account to the capital account which prevents double taxation of that income. Whenever a shareholder's undistributed taxable income is subsequently paid out to him it will not be taxable to him because it will not be a distribution made "out of [the company's] earnings and profits" within the meaning of § 316(a). Should a shareholder dispose of his stock before the accumulated undistributed taxable income has been distributed, it is also protected from further taxation at capital gains rates because of the previous upward adjustment of the shareholder's basis in his stock.

One further taxation principle is central to an understanding of Subchapter S and Treasury Regulation § 1.1375–4(b). Section 316(a) of the Internal Revenue Code, besides defining a dividend as a distribution out of earnings and profits, declares the general rule that "every distribution is made out of

---

2. S.Rep. No. 1983, 85th Cong., 2d Sess., 1958 U.S.Code Cong. & Admin.News 4791, 4876.

3. 26 U.S.C. § 1373(b):
   (b) *Amount included in gross income.* —Each person who is a shareholder of an electing small business corporation on the last day of a taxable year of such corporation shall include in his gross income, for his taxable year in which or with which the taxable year of the corporation ends, the amount he would have received as a dividend, if on such last day there had been distributed pro rata to its shareholders by such corporation an amount equal to the corporation's undistributed taxable income for the corporation's taxable year. For purposes of this chapter, the amount so included shall be treated as an amount distributed as a dividend on the last day of the taxable year of the corporation.

4. 26 U.S.C. § 1377(a):
   (a) *Reduction for undistributed taxable income.*—The accumulated earnings and profits of an electing small business corporation as of the close of its taxable year shall be reduced to the extent that its undistributed taxable income for such year is required to be included in the gross income of the shareholders of such corporation under section 1373(b).

5. 26 U.S.C. § 1376(a):
   (a) *Increase in basis of stock for amounts treated as dividends.*—The basis of a shareholder's stock in an electing small business corporation shall be increased by the amount required to be included in the gross income of such shareholder under section 1373(b), but only to the extent to which such amount is included in his gross income in his return, increased or decreased by any adjustment of such amount in any redetermination of the shareholder's tax liability.

earnings and profits to the extent thereof." Thus, a corporation which has accumulated earnings and profits may not declare a distribution to be one of capital and therefore, tax-free. Subchapter S, however, in addition to eliminating the double taxation of corporate income, provides the further benefit in § 1375(d) [6] of allowing distributions to be attributed first to previously taxed undistributed taxable income even though the company has accumulated earnings and profits.[7]

With these legal principles in mind, we turn again to the facts of this case. In 1959 Forest Land Company had taxable income of $128,956.24, of which $888.70 was distributed, leaving $128,067.54 as undistributed taxable income. In 1960 the company earned $158,183.84, of which $73,382.74 was indisputably distributed in the form of money. The Government argues that the shareholders owe taxes on the remaining $84,801.10 of 1960 corporate income as undistributed taxable income under § 1373, as well as on the entire December 31 distribution as a dividend paid out of accumulated earnings and profits, because a distribution of property rather than money. The taxpayer argues that the distribution should first reduce the 1960 undistributed taxable income to zero and then be treated, under § 1375(d), as a tax-free distribution of undistributed taxable income taxed to shareholders in previous years.

The conclusion that the distribution was one of property rather than money clearly negates the first part of the taxpayer's argument because § 1373(c) allows only "the amount of money distributed as dividends during the taxable year"[8] to be deducted from taxable income that is taxable to shareholders under § 1373(b). Whether a property distribution may be tax-free under § 1375(d) as a distribution of previously taxed but undistributed taxable income is a more difficult question. While § 1375(d) does not include a specific restriction to money distributions as does § 1373(c), Treasury Regulation § 1.-1375-4(b) stipulates that only money distributions may be made tax-free. The District Court held that regulation invalid on the ground that it "violates the intent and purpose of Subchapter 'S', which was intended to avoid the very dual taxation which the defendant

6. 26 U.S.C. § 1375(d):
   (d) *Distributions of undistributed taxable income previously taxed to shareholders.—*
   (1) *Distributions not considered as dividends.—*An electing small business corporation may distribute, in accordance with regulations prescribed by the Secretary or his delegate, to any shareholder all or any portion of the shareholder's net share of the corporation's undistributed taxable income for taxable years prior to the taxable year in which such distribution is made. Any such distribution shall, for purposes of this chapter, be considered a distribution which is not a dividend, but the earnings and profits of the corporation shall not be reduced by reason of any such distribution.

7. Although the earnings and profits of a Subchapter S corporation are reduced each year by the amount of money distributions and undistributed taxable income, the company may still have accumulated earnings and profits from two possible sources. First, a company may,

in a given year, have earnings and profits greater than its taxable income. For example, interest on tax-exempt municipal bonds is not taxable income, but does contribute to earnings and profits. Second a Subchapter S corporation may have accumulated earnings and profits from years prior to its election to qualify for the special tax treatment under Subchapter S. This is the case with Forest Land Company which accumulated over $500,000 of earnings and profits in years when it was not taxed under Subchapter S.

8. 28 U.S.C. § 1373(c):
   (c) *Undistributed taxable income defined.—*For purposes of this section, the term "undistributed taxable income" means taxable income (computed as provided in subsection (d)) minus the sum of (1) the tax imposed by section 1378(a) and (2) the amount of money distributed as dividends during the taxable year, to the extent that any such amount is a distribution out of earnings and profits of the taxable year as specified in section 316(a) (2).

seeks to secure * * *." 312 F.Supp. at 369. We think the Treasury Regulation should have been upheld.

We note first that "Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes * * *." Commissioner of Internal Revenue v. South Texas Co., 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948); Bingler v. Johnson, 394 U.S. 741, 750, 89 S.Ct. 1439, 22 L.Ed.2d 695 (1969). "The role of the judiciary in cases of this sort begins and ends with assuring that the Commissioner's regulations fall within his authority to implement the congressional mandate in some reasonable manner." United States v. Correll, 389 U.S. 299, 307, 88 S.Ct. 445, 450, 19 L.Ed.2d 537 (1967).

There is also reason to believe that Congress intended some greater latitude for Treasury Department discretion than usual in interpreting § 1375(d). Section 7805 gives the Secretary of the Treasury general authority to issue "needful rules and regulations" for enforcement of the Internal Revenue Code. Yet § 1375(d) itself also requires that distributions of previously taxed undistributed taxable income be made "in accordance with regulations prescribed by the Secretary or his delegate."

The most important point bearing on the validity of Treasury Regulation § 1.-1375–4(b) is that denying tax-free status to property distributions under § 1375(d) does not have the effect of reimposing the double taxation of corporate income that Subchapter S was intended to avoid. It is the corporation's reduction of earnings and profits under § 1377 and the shareholders' increase of basis under § 1376 which prevents double taxation, not the distribution provision of § 1375(d). If a corporation has accumulated earnings and profits, the effect of the regulation is to render the immediate property distribution taxable rather than tax-free. Accordingly, earnings and profits are reduced by the amount of the distribution, but undistributed taxable income of previous years —the income protected from double taxation—is not reduced, nor is the shareholder's basis reduced as it would be under § 1016(a) (4) if the distribution were treated as tax-free under § 1375(d).

The effect of Treasury Regulation § 1.1375–4(b) is only to treat property distributions as having been made out of unprotected income rather than protected income to the extent that the corporation has accumulated unprotected income. The protected income—undistributed taxable income previously taxed to shareholders—may be distributed tax-free in the form of money at any later time. Or if it is not distributed, it still will have been protected from double taxation because the § 1376 adjustment to basis allows each shareholder to receive his share of the income tax-free in the form of an untaxed capital gain.

Certainly the regulation in question has tax consequences. In this case it renders a particular distribution taxable when otherwise it would not be. In the long run it not only changes the year of tax incidence but may cause income which otherwise would be taxed at capital gains rates to be taxed as regular income. But the double taxation of corporate income which Subchapter S was specifically intended to prevent is not a consequence which follows from the regulation.

■ We find the challenged Treasury Regulation reasonable and not inconsistent with the revenue statutes. Indeed, it actually renders § 1375(d) consistent with § 1373(c). The latter section specifically allows only money distributions to be offset against the current year's taxable income.[9] Thus, since a property

---

9. Nor can it be argued that the word "money" was an inadvertent oversight in § 1373(c), for the legislative history leaves no doubt that Congress was aware of the effect of including that word:

The "undistributed taxable income" of a small-business corporation is the corporation's taxable income, minus the amount of money distributed as dividends during the taxable year out of

distribution does not reduce but would be taxed in addition to current taxable income to the extent there exist accumulated earnings and profits, the regulation simply provides that distribution of the same property a year later also cannot be offset against the identical undistributed taxable income. For, as the Government's brief notes, "previously taxed undistributed taxable income is merely the same undistributed taxable income one year later."

Moreover, the Government correctly points out that Subchapter S was intended to be kept relatively simple and further accounting complexities would be created if property distributions were held to qualify for tax-free treatment under § 1375(d). We do not think these complications insurmountable, nor have we been given any more forceful policy justification for the money/property distinction.

> But we do not sit as a committee of revision to perfect the administration of the tax laws. * * * In this area of limitless factual variations "it is the province of Congress and the Commissioner, not the courts, to make the appropriate adjustments." Commissioner of Internal Revenue v. Stidger, 386 U.S. 287, 296, 87 S.Ct. 1065, 18 L.Ed.2d 53.

United States v. Correll, 389 U.S. at 306–307, 88 S.Ct. at 449. It is Congress that has elected to distinguish between money and property in § 1373(c), and Treasury Regulation § 1.1375–4(b) cannot be said to be either unreasonable or

inconsistent in carrying that distinction into § 1375(d) as well.

### III. *The Year of Distribution*

▆ The taxpayer also argues that if the distribution was one of property rather than money it was a distribution effected in 1961 rather than 1960 since the stock certificate was not received until January 6, 1961. However, it has been well established since the leading case of Ruml v. Commissioner of Internal Revenue, 83 F.2d 257 (2d Cir. 1936), that for taxation purposes the determinative date of transfer for stock is not the date of the physical transfer of certificates. The controlling date is the date that a transfer is finally determined upon, regardless of when the certificates themselves are delivered. *See* Swenson v. Commissioner of Internal Revenue, 309 F.2d 672 (8th Cir. 1962).

In this case a 1960 distribution was intended and checks, which represented little more than claim checks on the stock certificates, were issued to the stockholders in that year. Although not controlling, of persuasive significance is the further fact that the certificates were actually dated December 30, 1960, the day before the pretensive checks were issued. We think the District Court was entirely correct in holding that the distribution took place in the very year that the company intended it to take place, even if the company and its shareholders were mistaken as to the nature of that distribution.

Affirmed in part, vacated in part, and remanded with directions that judgment be entered for the United States.

---

earnings and profits of the taxable year as specified in section 316(a) (2) of the 1954 Code. Thus, distributions in kind do not reduce "undistributed taxable income" * * *.

S.Rep. No. 1983, 85th Cong., 2d Sess., 1958 U.S.Code Cong. & Admin.News 4791, 5007.