RANDALL N. CLARK AND JEANNETTE S. CLARK, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ESTATE OF BRYAN M. CLARK, DECEASED, RANDALL N. CLARK, EXECUTOR AND CHARLOTTE S. CLARK, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 6298–69, 6299–69. Filed April 19, 1972.

---

*Irving Isaacson,* for the petitioners.
*Joel Gerber,* for the respondent.

### OPINION

RAUM, *Judge:* The Commissioner determined deficiencies in income tax as follows:

| | Docket No. | Year ending | Deficiency |
|---|---|---|---|
| Randall N. and Jeannette S. Clark | 6298-69 | Dec. 31, 1966 | $6,494.08 |
| Bryan M. and Charlotte S. Clark | 6299-69 | Jan. 31, 1967 | 29,503.19 |

The only issue remaining for decision is whether a distribution to the shareholders of an electing small business corporation of its negotiable demand notes within $2\frac{1}{2}$ months after the close of its taxable year constituted a tax-free distribution of the corporation's undistributed taxable income under section 1375(f), I.R.C. 1954. The facts have been stipulated.

Randall N. and Jeannette S. Clark, petitioners in docket No. 6298–69, are husband and wife. They filed a joint Federal income tax return for the calendar year 1966 with the district director of internal revenue at Augusta, Maine. Petitioners in docket No. 6299–69 are the Estate of Bryan M. Clark and Charlotte S. Clark, Bryan's widow. Bryan and Charlotte filed a joint Federal income tax return for the taxable year ending January 31, 1967, with the district director of internal revenue at Augusta, Maine. Bryan died on August 24, 1968, and Randall N. Clark was duly appointed executor of his "estate." The petitioners in both cases resided in Union, Maine, at the time of filing of their respective petitions herein.

Bryan, Charlotte, and Randall Clark were shareholders and directors of B. M. Clark Co., Inc. (BMC or the corporation), a supplier of construction equipment. Together they owned all of the issued, no-par common stock of the corporation, their respective stockholdings being apportioned as follows:

|  | *Percent* |
|---|---|
| Bryan M. Clark | 72.1 |
| Charlotte S. Clark | 2.6 |
| Randall N. Clark | 25.3 |
| | **100.0** |

BMC was incorporated in 1947. On April 16, 1963, it elected to be treated, for Federal income tax purposes, as a "small business corporation" pursuant to section 1371 *et seq.* (subch. S), I.R.C. 1954. Such election remained in force through the corporation's taxable year ending March 31, 1966, and terminated as of April 1, 1966, the first day of its taxable year ending March 31, 1967.[1]

On March 31, 1966, BMC had accumulated earnings and profits in the amount of $143,996, no part of which represented taxable income realized by it during the years that it was an electing small business corporation. In addition, its taxable income for the fiscal year ending March 31, 1966, was $48,683, all of which was undistributed, and it also then had undistributed taxable income for prior years (during which it was a subchapter S corporation) in the aggregate amount of $54,001, of which $50,212 related to its fiscal year ending March 31, 1965.

On March 31, 1966, the corporation made a distribution to its stockholders in the amount of $50,212, purportedly in respect of the theretofore undistributed taxable income allocable to the fiscal year ending March 31, 1966. This distribution was made pursuant to a vote of BMC's board of directors at a meeting on March 21, 1966, the minutes of which read, in part, as follows:

The President stated that, in view of the status of the Corporation as a subchapter S Corporation under the Internal Revenue Code, that it would be advisable to distribute to the shareholders their proportionate shares of the Corporation's undistributed taxable income for the fiscal years ending March 31, 1965 and March 31, 1966.

On motion, duly made and seconded, it was

VOTED: That the Corporation pay over to shareholders of record their proportional share of the Corporation's undistributed taxable income for the fiscal year ending March 31, 1965 as follows:

| | |
|---|---|
| Bryan M. Clark | $36,221.13 |
| Charlotte S. Clark | 1,305.50 |
| Randall N. Clark | 12,685.08 |
| | 50,211.71 |

On motion, duly made and seconded, it was

VOTED: That the Corporation pay over to shareholders of record their proportionate shares of the Corporation's undistributed taxable income for the fiscal year ending March 31, 1966 in the form of the Corporation's demand prom-

---

[1] The stipulation of facts discloses that a second class of stock was created as of Dec. 2, 1966. Since that circumstance disqualified BMC as a small business corporation under sec. 1371(a)(4), its election to be treated as a small business corporation terminated as of the beginning of the taxable year under sec. 1372(e)(3), which provides that "Such termination shall be effective for the taxable year of the corporation in which the corporation ceases to be a small business corporation and for all succeeding taxable years of the corporation." The record does not disclose whether there was any other event on an earlier date that may have been independently effective to terminate the election as of the beginning of the corporation's taxable year.

issory notes, such notes to be issued as soon as the amounts thereof shall be determined by the Corporation's accountant.

On May 31, 1966, the corporation issued its demand non-interest-bearing notes to its stockholders as follows:

| | |
|---|---|
| Bryan M. Clark | $37, 832. 37 |
| Charlotte S. Clark | 1, 364. 27 |
| Randall N. Clark | 13, 275. 43 |

[2] 52, 472. 07

On July 13, 1966, the corporation made payment in full on these notes, without interest, to the foregoing payees.[3]

Pursuant to its status as an electing small business corporation during its taxable year ending March 31, 1966, BMC owed and paid no Federal income tax for such year; its income was apportioned among its shareholders and reported on their income tax returns as follows:

| Shareholder | Return for year ending | Share of BMC's taxable income |
|---|---|---|
| Bryan M. Clark | Jan. 31, 1967 | $35, 100 |
| Charlotte S. Clark | Jan. 31, 1967 | 1, 266 |
| Randall N. Clark | Dec. 31, 1966 | 12, 317 |
| | | 48, 683 |

The shareholders did not include the cash distributions they received on July 13, 1966, in gross income, treating them as nontaxable distributions out of previously taxed income. In his notices of deficiency, the Commissioner determined that the respective amount of cash received by each stockholder on July 13, 1966—

does not qualify as a non-dividend distribution of previously taxed income under Section 1375(d) of the I.R.C. since the corporation terminated its election to be

---

[2] This amount was apparently intended to represent the corporation's taxable income for the year ending Mar. 31, 1966, in the amount of $48,683, plus the difference between the undistributed taxable income attributable to prior years ($54,001) and the distribution of $50,212 on Mar. 31, 1966, purportedly allocable to the year ending Mar. 31, 1965, as follows:

| | | |
|---|---|---|
| Taxable income, year ending Mar. 31, 1966 | | $48, 683 |
| Undistributed taxable income, Apr. 1, 1965 | $54,001 | |
| Less: Mar. 31, 1966 distribution | 50,212 | 3, 789 |
| | | 52, 472 |

[3] The corporation had a savings account from which no withdrawals had been made at least from May 4, 1959, to June 30, 1969. At the time of the Mar. 21, 1966, meeting of the board of directors, the balance in that account was $66,799.14. The last preceding interest date was Jan. 15, 1966, and the following one was July 15, 1966. Although the distributions effected through the promissory notes could have been made in cash out of the savings account at the time of the foregoing meeting of the board of directors, or at any time within 2½ months after the close of the fiscal year ending Mar. 31, 1966, the promissory notes were used instead in order not to "lose" the July 15, 1966, interest payment. However, in making payment of the notes on July 13, 1966, the corporation obviously used funds other than those in its savings account.

treated as a small business corporation effective as of the first day of its taxable year, 4/1/66. Thus, such distribution as was made is fully taxable to you. See Section 1.1375-4 of the Regs. under the 1954 Code.

The Commissioner accordingly increased the taxpayers' respective taxable incomes by the amounts of the cash distributions received by them. In effect, he ruled that the distributions were chargeable against the corporation's accumulated earnings and profits rather than against its undistributed taxable income. We hold that his determinations were correct.

Petitioners' position in substance is that the relevant distributions are the notes which they received from the corporation on May 31, 1966, rather than the cash payments on July 13, 1966; that they received the notes within 2½ months following the close of the corporation's taxable year; and that they were entitled to receive such notes tax-free under section 1375(f)(1), I.R.C. 1954, which provides:

SEC. 1375. SPECIAL RULES APPLICABLE TO DISTRIBUTIONS OF ELECTING SMALL BUSINESS CORPORATIONS.

(f) DISTRIBUTIONS WITHIN 2½-MONTH PERIOD AFTER CLOSE OF TAXABLE YEAR.—

(1) DISTRIBUTIONS CONSIDERED AS DISTRIBUTIONS OF UNDISTRIBUTED TAXABLE INCOME.—Any distribution *of money* made by a corporation after the close of a taxable year with respect to which it was an electing small business corporation and on or before the 15th day of the third month following the close of such taxable year to a person who was a shareholder of such corporation at the close of such taxable year shall be treated as a distribution of the corporation's undistributed taxable income *for such year*, to the extent such distribution (when added to the sum of all prior distributions of money made to such person by such corporation following the close of such year) does not exceed such person's share of the corporation's undistributed taxable income for such year. Any distribution so treated shall, for purposes of this chapter, be considered a distribution which is not a dividend, and the earnings and profits of the corporation shall not be reduced by reason of such distribution. [Emphasis supplied.]

The Government, on the other hand, contends that section 1375(f)(1) applies only with respect to distributions "of money," that the notes were not "money" within the meaning of these provisions, and that section 1375(f)(1) therefore does not operate to relieve petitioners of tax.

There has been a certain amount of confusion surrounding this case, and, although we agree with the Government's position as thus narrowly stated above, the stipulated facts make clear that the Commissioner's determinations must be approved on at least two alternative grounds: (1) That the $50,212 distribution made by the corporation on March 31, 1966, although described as being chargeable against its undistributed taxable income for its fiscal year ending March 31, 1965, must in fact be applied first against its $48,683 undistributed taxable

income for its fiscal year ending March 31, 1966, with the consequence that no such undistributed taxable income for that year remained which could thereafter be distributed tax-free within 2½ months under section 1375(f); and (2) that in any event, even if there were undistributed taxable income to which section 1375(f) might otherwise apply, there were no distributions in "money" within 2½ months after the close of the taxable year. Preliminarily, however, it is important that the nature and general framework of subchapter S be clearly understood.

Section 1371(a) defines a "small business corporation," and section 1372(a) provides that a corporation which comes within that definition may elect not to be subject to tax on its income. A corporation is designated as an "electing small business corporation" with respect to its taxable years for which such an election is in force. Sec. 1371(b). Dividends distributed by an electing small business corporation are included in the gross income of the recipients in the same manner as dividends distributed by nonelecting corporations. See sec. 1.1372–1(c) (2) and (7), Income Tax Regs.; *De Treville* v. *United States*, 445 F. 2d 1306, 1309 (C.A. 4); *George A. Roesel*, 56 T.C. 14, 23. In addition, each person who is a shareholder of an electing small business corporation on the last day of a taxable year of such corporation is required by section 1373(b) to "include in his gross income, for his taxable year in which or with which the taxable year of the corporation ends, the amount he would have received as a dividend, if on such last day" the corporation had distributed pro rata to its shareholders an amount equal to the corporation's "undistributed taxable income" for its taxable year. The term "undistributed taxable income" introduces a new concept in our tax law and is defined by section 1373(c) to mean "taxable income * * * minus * * * the amount *of money* distributed as dividends during the taxable year, to the extent that any such amount is a distribution out of earnings and profits of the taxable year as specified in section 316(a) (2)" (emphasis supplied). Just as a corporation's earnings and profits are reduced by dividend distributions it makes during a year, an electing small business corporation's earnings and profits are reduced to the extent that its undistributed taxable income is required to be included in the gross income of its shareholders as a "constructive dividend" on the last day of its taxable year. Sec. 1377(a). Like other dividends, yearend constructive dividends of undistributed taxable income are deemed to be made out of the most recently accumulated earnings and profits, pursuant to section 316(a). See sec. 1.1372–1(c) (7), Income Tax Regs.

Once it has been taxed to the shareholders and subtracted from a corporation's earnings and profits, undistributed taxable income is treated like a capital account on the tax books of the corporation, and

indeed the basis of the shares of each shareholder is increased by the amount of his constructive dividend to the extent that it is included in his gross income (sec. 1376(a)), just as though he had made a capital contribution to the corporation. *De Treville v. United States*, 445 F. 2d at 1309. Moreover, an electing small business corporation may make a nontaxable, nondividend distribution to its shareholders out of this fund of "previously taxed income" in a taxable year subsequent to the taxable year in which the income was earned. Sec. 1375(d)(1).[4] However, tax-free distributions of previously taxed income must be made in "money." This is explicitly required by section 1375(f) in respect of distributions made within 2½ months after the close of the taxable year. And it is also required by section 1.1375-4(b) of the regulations implementing section 1375(d), which deals generally with distributions of undistributed taxable income previously taxed to shareholders. These regulations have been held valid in *De Treville v. United States*, 445 F. 2d 1306.

The regulations further limit the distribution of previously taxed income by specifying that distributions of money during a given taxable year are deemed to be made out of earnings and profits for such year to the extent such current earnings and profits exist, and that only money distributions in excess of current earnings and profits are deemed to be made from previously taxed income. See sec. 1.1375-4(b), Income Tax Regs., cited with approval in *Attebury v. United States*, 430 F. 2d 1162, 1171 (C.A. 5); *Benderoff v. United States*, 270 F. Supp. 87, 89-90 (S.D. Iowa), reversed and remanded on another issue 398 F. 2d 132 (C.A. 8). However, money distributions of an electing small business corporation are "attributed * * * to previously taxed undistributed taxable income even though the company has accumulated earnings and profits" from prior years. *De Treville v. United States*, 445 F. 2d at 1310. See also *Attebury v. United States*, 430 F. 2d at 1171. In this respect such distributions differ from attempted distributions of capital by an ordinary corporation, which are required to be treated as having been made out of earnings and profits to the extent thereof. Sec. 316(a).

The hierarchy of sources out of which cash distributions are deemed to be made is altered for corporations whose election under subchap-

---

[4] SEC. 1375. SPECIAL RULES APPLICABLE TO DISTRIBUTIONS OF ELECTING SMALL BUSINESS CORPORATIONS.

(d) DISTRIBUTIONS OF UNDISTRIBUTED TAXABLE INCOME PREVIOUSLY TAXED TO SHAREHOLDERS.—

(1) DISTRIBUTIONS NOT CONSIDERED AS DIVIDENDS.—An electing small business corporation may distribute, in accordance with regulations prescribed by the Secretary or his delegate, to any shareholder all or any portion of the shareholder's net share of the corporation's undistributed taxable income for taxable years prior to the taxable year in which such distribution is made. Any such distribution shall, for purposes of this chapter, be considered a distribution which is not a dividend, but the earnings and profits of the corporation shall not be reduced by reason of any such distribution.

ter S has terminated. Apart from the special situation dealt with in section 1375(f) relating to distributions within 2½ months after the close of the taxable year, such corporations cannot distribute previously taxed income from years prior to that in which their election terminates. See sec. 1.1375–4(a), Income Tax Regs.[5] Thus, termination of the election activates the regular corporate distribution rules of sections 301 and 316 of the Code and effectively precludes a corporation from making distributions of its previously taxed income until all of its earnings and profits—both current and accumulated from prior years—have been exhausted. See Rev. Rul. 71–102, 1971–1 C.B 263.

With the foregoing general principles in mind, we address ourselves to the case before us.

1. *Unavailability of undistributed taxable income to support petitioners' claimed tax-free distributions under section 1375(f) within 2½ months after close of taxable year.*—Petitioners argue that the issuance of the demand notes on May 31, 1966, less than 2½ months after the close of the corporation's fiscal year, qualified as a "distribution of money" within section 1375(f), which is to be treated as a tax-free distribution of the corporation's undistributed taxable income. However, the record makes clear that at the time the notes were issued the corporation had no undistributed taxable income to which section 1375 (f) could apply, even if the notes were treated as "money."

Section 1375(f) speaks of a distribution of money during the specified 2½-month grace period following the close of a taxable year, and provides that it "shall be treated as a distribution of the corporation's undistributed taxable income *for such year*" (emphasis supplied). Thus, if any distribution that qualified under section 1375(f) were made here after March 31, 1966, it could be applied only against the corporation's undistributed income for the fiscal year ending March 31, 1966. But the record herein establishes that as of April 1, 1966, there was no undistributed taxable income for the fiscal year which had just ended. To be sure, the corporation had taxable income in the amount of $48,683 for its fiscal year ending March 31, 1966. However, the distribution of $50,212 on the last day of that year must be treated as eliminating such taxable income completely. It is wholly immaterial that the corporation attempted to characterize the $50,212 distribution as relating to its fiscal year ending March 31, 1965. For, a distribution of money by an electing small business corporation— unless made within the first 2½ months of its taxable year, as the

---

[5] Sec. 1.1375–4(a) provides in part:

If an election is terminated under section 1372(e), the corporation may not, during the first taxable year to which the termination applies or during any subsequent taxable year, distribute previously taxed income of taxable years prior to the termination as a non-dividend distribution pursuant to this section. * * *

March 31 distribution plainly was not—is deemed to be made first out of its earnings for the year of the distribution to the extent thereof, and only the amount of the distribution in excess of current earnings is treated as being from previously taxed income. See sec. 1.1373–1(d), Income Tax Regs.; [6] *Attebury* v. *United States*, 430 F. 2d at 1167; *George A. Roesel*, 56 T.C. at 2425; and p. 100 *supra*. Thus, it appears that on March 31 the corporation distributed only $1,529 ($50,212 minus $48,683) of previously taxed income and all of its taxable income ($48,683) for the current year. Although it retained $52,472 of undistributed taxable income following the March 31 distribution, all of such income was from taxable years prior to that ending on March 31, 1966. Section 1375(f) provides nondividend treatment only for distributions of undistributed taxable income of the year which immediately preceded that in which the distribution occurred. Accordingly, since no undistributed taxable income remained that could support *any* tax-free distribution during the 2½-month grace period under section 1375(f), petitioners are not entitled to any relief under its provisions regardless of whether the requirements of those provisions were otherwise fully satisfied.[7]

2. *Inapplicability of section 1375(f) because of failure to distribute "money" within the 2½-month period.*—In seeking to bring themselves within the provisions of section 1375(f) petitioners have found it necessary to contend that the notes issued to them by the corporation on May 31, 1966, qualified as a distribution "of money." A sharp controversy has arisen between the parties in this respect. We hold

---

[6] Sec. 1.1373–1 Corporation undistributed taxable income taxed to shareholders.

(d) *Determination of dividends in money out of earnings and profits of the taxable year.* In applying section 316(a) to distributions by an electing small business corporation, earnings and profits of the taxable year are first allocated to actual distributions of money made during such taxable year (including any distribution which, pursuant to § 1.1375–5, is treated as made on the last day of the taxable year) which are not (1) in exchange for stock, or (2) distributions of the corporation's undistributed taxable income for the immediately preceding taxable year under section 1375(f) and § 1.1375–6. Therefore, such distributions of money are dividends from earnings and profits of the taxable year to the extent of such earnings and profits even though there may be distributions of property other than money during such taxable year or constructive distributions pursuant to section 1373(b) at the end of such taxable year. If such distributions of money made during the taxable year exceed the earnings and profits of such year, then that proportion of each such distribution which the total of the earnings and profits of the year bears to the total of such distributions made during the year shall be regarded as out of the earnings and profits of that year. For purposes of section 1373(c) a distribution of money does not include a distribution of an obligation of the corporation or a distribution of property other than money in satisfaction of a dividend declared in money. See section 1377(b) for special rules relating to computation of earnings and profits of an electing small business corporation for any taxable year.

[7] Moreover, even if the $48,683 had not been wiped out by the Mar. 31, 1966, distribution, and even if petitioners had otherwise fully met the requirements of sec. 1375(f), they still would not be justified in treatilng the *entire* $52,472 distribution associated with the notes as being a distribution of previously taxed income; only that portion thereof that was not in excess of the taxable income of the fiscal year ending Mar. 31, 1966 ($48,683), would be received tax-free under sec. 1375(f) in such circumstances.

that the notes were not "money," and that section 1375(f) is inapplicable for this reason as well.

In providing that distributions out of undistributed taxable income from the prior year under section 1375(f) could be made only in "money," Congress was obviously undertaking to treat grace-period distributions consistently with those made during the taxable year itself, which are governed by section 1373(c).[8] The word "money" is certainly suggestive of "cash," and in common usage it does not ordinarily include corporate notes. The legislative history of subchapter S in general and of sections 1373(c) and 1375(f) in particular appears to throw but very little, if any, light on the subject,[9] and our attention has not been directed to any legislative materials indicating that Congress used the word in any sense other than its normal, ordinary one. But if the matter were in doubt, that doubt would be resolved by the construction placed on this very word by the regulations, which provide explicitly that (sec. 1.1375–6(a)(2)(iii)) "a distribution of money does not include a distribution of an obligation of the corporation."[10]

We can hardly take seriously petitioners' contention that the regulations are invalid. It is well settled that "Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes and that they constitute contemporaneous constructions by those charged with administration of these statutes which should not be overruled except for weighty reasons * * * [and] unless clearly contrary to the will of Congress." *Commissioner* v. *South Texas Co.*, 333 U.S. 496, 501, 503. See also *Bingler* v. *Johnson*, 394 U.S. 741, 749–750; *Fawcus Machine Co.* v. *United States*, 282 U.S. 375, 378; *Boske* v. *Comingore*, 177 U.S. 459, 470; *Brewster* v. *Gage*, 280 U.S. 327, 336; *Textile Mills Corp.* v. *Commissioner*, 314 U.S. 326,

---

[8] As noted above, p. 99, sec. 1373(c) defines "undistributed taxable income" to mean "taxable income * * * minus * * * the amount *of money* distributed as dividends during the taxable year, to the extent that any such amount is a distribution out of earnings and profits of the taxable year as specified in section 316(a)(2)" (emphasis supplied).

[9] Sec. 1375(f) was added to subch. S by sec. 1(a) of Pub. L. 89–389 (1966). The committee reports accompanying that bill disclose that sec. 1375(f) was designed to accommodate electing small business corporations which desired to distribute their profits during the year they were earned but were unable to ascertain the amount of such profits until after their books had been closed. This provision was also intended to counteract the popular misconception that the tax posture of a subch. S corporation was substantially identical to that of a partnership, and that the timing of corporate distributions was therefore of no consequence. See H. Rept. No. 1238, 89th Cong., 2d Sess., pp. 3–5 (1966) ; S. Rept. No. 1007, 89th Cong., 2d Sess., pp. 3–5 (1966). Nothing in these reports indicates Congress' purpose in requiring that grace-period distributions be made in "money." Nor has our attention been called to anything in the history of sec. 64(a), Technical Amendments Act of 1958, Pub. L. 85–866, adding subch. S to the Code, which suggests the reason for the inclusion of the "money" limitation in sec. 1373(c). See S. Rept. No. 1983, 85th Cong., 2d Sess., pp. 218–219 (1958).

[10] Identical language appears in the regulations construing sec. 1373(c). See sec. 1.1373–1(d).

336–339; *Colgate Co.* v. *United States*, 320 U.S. 422, 426; *De Treville* v. *United States*, 445 F. 2d at 1311–1312; *Buhler Mortgage Co.*, 51 T.C. 971, 979, affirmed per curiam 443 F. 2d 1362 (C.A. 9); *William F. Sanford*, 50 T.C. 823, 832, affirmed per curiam 412 F. 2d 201 (C.A. 2), certiorari denied 396 U.S. 841. And as already noted, the regulations are not only in accord with the normal meaning of the statutory language, but nothing has been shown to establish that they are in anyway inconsistent with the statute. We hold that the regulations are valid.

Petitioners have argued that if a corporate demand note is not "money," then a check, which they characterize as a similar negotiable instrument, would likewise fail to qualify as "money," and that such interpretation would "wreak havoc with established mercantile practice" by requiring every distribution of undistributed taxable income "to be made by armored car full of dollar bills." However, the question of the application of the regulation to negotiable instruments other than the corporate notes in question is not before us. There are substantial differences between such notes and a check. It is not uncommon in ordinary usage to regard a check as "money" or "cash," whereas a corporate note is customarily classified differently in the business world. Thus, it is quite probable that the payee of a check would treat it as "cash" on his balance sheet, but would place a note payable to him in a different category, say, "notes receivable." Moreover, in this very case, although the notes were theoretically payable on demand, it was obviously intended that payment thereon was to be delayed for a substantial period, certainly beyond the expiration of the 2½-month grace period. This circumstance reinforces the conclusion that these notes were not "money." Whatever interpretation may be given to the regulations in respect to checks—and on this we express no opinion—we conclude that the notes before us were not "money," and that for this reason alone, petitioners are not entitled to the benefit of section 1375(f). The distribution of the notes on May 31, 1966, was not a distribution of "money" within those provisions, and the payments made on those notes on July 13, 1966, occurred too late, after the lapse of the 2½-month period. Accordingly, neither the notes nor the payments thereon may be charged against undistributed taxable income under section 1375(f). The distributions must be treated as dividends chargeable against the corporation's earnings and profits.

Contrary to popular notion, subchapter S is far from simple. It has many pitfalls, cf., e.g., *Samuel Pollack*, 47 T.C. 92, affirmed 392 F. 2d 409 (C.A. 5). And its complex provisions must be applied most carefully in conjunction with subchapter C. Petitioners or their advisers were not unsophisticated in respect of the difficulties presented by subchapter S, as appears from the minutes of the meeting

of the board of directors on March 21, 1966. They either knew or should have known that the statute required a distribution of "money," and they obviously took a calculated risk in respect of the distribution of the notes. They were wrong, and must bear the consequences. To attempt to give them relief here would distort a carefully designed complex statutory scheme. We must apply the statute as we find it.

*Decision will be entered for the respondent in docket No. 6298–69.*

*Decision will be entered under Rule 50 in docket No. 6299–69.*

