ESTATE OF EUGENE BROOKS KIRK, DECEASED, MARY ANN KIRK, EXECUTRIX, AND MARY ANN KIRK, PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 1012–76.    Filed August 25, 1978.

*Jordan Stokes III*, for the petitioners.
*Robert B. Nadler*, for the respondent.

HALL, *Judge:* Respondent determined a deficiency of $3,792.39 in Eugene and Mary Kirk's income tax for 1972. Eugene Kirk died on October 4, 1976, and pursuant to an order of this Court dated September 13, 1977, his estate was substituted as a party. The sole issue for decision is whether a distribution of $7,157.03 by Music City Songcrafters, Inc., to Eugene Kirk on November 11, 1972, was taxable to him. That corporation's subchapter S election was terminated during the corporation's taxable year ended June 30, 1973.

OPINION

All of the facts have been stipulated by the parties and are found accordingly. Those necessary to an understanding of this case are as follows:

At the time they filed their petition, Eugene and Mary Kirk were residents of Nashville, Tenn.

Music City Songcrafters, Inc. (Music City), was incorporated under the laws of Tennessee on January 23, 1962. It adopted a fiscal year ending June 30. For its fiscal years ended June 30, 1962 through 1970, Music City filed corporate income tax returns, Forms 1120. Beginning July 1, 1970, Music City elected to be taxed as a subchapter S corporation under section 1372.[1] At

---

[1] All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue.

that time, Eugene owned 100 percent of the stock of Music City. Music City's retained earnings and profits at that time were $105,037.68. For its following 2 fiscal years ended June 30, 1971 and 1972, Music City filed U. S. Small Business Corporation Income Tax Returns, Forms 1120-S.

Music City made two distributions to Eugene in 1972. Music City issued checks to him in the amounts of $5,000 on July 24, 1972, and $7,157.03 on November 11, 1972. On November 14, 1972, Eugene made a gift of 5 percent of Music City's stock to his wife Mary. She did not file a consent to Music City's subchapter S election, thereby causing the election to be automatically terminated.[2]

For its fiscal years ended June 30, 1971, 1972, and 1973 Music City reported taxable income of $20,200.20, $13,533.79, and a loss of $12,471.67, respectively. As of June 30, 1972, the balance in its "Shareholders Undistributed Taxable Income" account was $13,533.79.

On their joint income tax return for 1972, petitioners did not include in their gross income either of the cash distributions received from Music City that year. In the statutory notice, respondent determined that the $7,157.03 distribution to Eugene on November 11, 1972, was not a distribution of previously taxed income and was includable in gross income.

The sole issue for decision is whether the distribution of $7,157.03 on November 11, 1972, by Music City to Eugene was taxable to him where Music City's subchapter S election was terminated during the taxable year ended June 30, 1973. Respondent determined that Music City's subchapter S status terminated as of the beginning of its taxable year (i.e., July 1, 1972) and, accordingly, that the distribution to Eugene of $7,157.03 on November 11, 1972, was taxable as a dividend pursuant to sections 301 and 316. Section 1.1375–4(a), Income Tax Regs.,[3] provides in part that if an election is terminated

---

[2]For taxable years beginning after Dec. 31, 1976, this section has been amended so that the election terminates only if a new shareholder "affirmatively refuses * * * to consent to such election on or before the 60th day after the day on which he acquires the stock." Sec. 1372(e)(1), as amended by sec. 902(c)(3), Pub. L. 94–455 (Tax Reform Act of 1976), 90 Stat. 1609.

[3]Sec. 1.1375–4(a) provides:

(a) *In general.* Under section 1375(d)(1), a distribution by an electing small business corporation [subchapter S corporation] to a shareholder of all or any portion of his net share of previously taxed income is considered a distribution which is not a dividend. Such a distribution reduces the basis of the shareholder's stock in the corporation in accordance with section 301(c)(2), and, if it exceeds such

because a new shareholder does not consent to the election, the corporation may not during the first taxable year to which the termination applies distribute perviously taxed income of taxable years prior to the termination as a nondividend distribution. Petitioners contend that this provision is invalid.

Music City's subchapter S status was terminated by Mary's failure to consent to that status when Eugene gave her 5 percent of Music City's shares on November 14, 1972. This termination was effective as of July 1, 1972, the beginning of Music City's taxable year. Sec. 1372(e)(1).[4] During this taxable year, Music City made two distributions to Eugene; the first, $5,000, on July 24, 1972, and the second, $7,157.03, on November 11, 1972. Respondent correctly determined that the former distribution fell within the 2½ month "grace period" provided by section 1375(f)[5] and, accordingly, was a nontaxable distribution of previously taxed income. However, respondent determined that the November 11, 1972, distribution was a taxable dividend out of Music City's accumulated earnings and profits. Sec. 1.1375–4(a), Income Tax Regs.

Petitioner's basic contention is that section 1.1375–4(a),

---

basis, is subject to the provisions of section 301(c)(3). The earnings and profits of the corporation are not reduced by reason of such a distribution. *If an election is terminated under section 1372(e), the corporation may not, during the first taxable year to which the termination applies* or during any subsequent taxable year, *distribute previously taxed income of taxable years prior to the termination as a nondividend distribution pursuant to this section.* (However, see sec. 1.1375–5 for rules with respect to certain distributions * * * of a preceding taxable year's undistributed taxable income.) [Emphasis added.]

[4]Sec. 1372(e)(1), as in effect in 1972, provides:

(1) NEW SHAREHOLDERS.—An election under subsection (a) made by a small business corporation shall terminate if any person who was not a shareholder in such corporation—

(A) on the first day of the first taxable year of the corporation for which the election is effective, if such election is made on or before such first day, or

(B) on the day on which the election is made, if such election is made after such first day,

becomes a shareholder in such corporation and does not consent to such election within such time as the Secretary or his delegate shall prescribe by regulations. Such termination shall be effective for the taxable year of the corporation in which such person becomes a shareholder in the corporation and for all succeeding taxable years of the corporation.

[5]Sec. 1375(f)(1) provides:

(1) DISTRIBUTIONS CONSIDERED AS DISTRIBUTIONS OF UNDISTRIBUTED TAXABLE INCOME.—Any distribution of money made by a corporation after the close of a taxable year with respect to which it was an electing small business corporation and on or before the 15th day of the third month following the close of such taxable year to a person who was a shareholder of such corporation at the close of such taxable year shall be treated as a distribution of the corporation's undistributed taxable income for such year, to the extent such distribution (when added to the sum of all prior distributions of money made to such person by such corporation following the close of such year) does not exceed such person's share of the corporation's undistributed taxable income for such year. Any distribution so treated shall, for purposes of this chapter, be considered a distribution which is not a dividend, and the earnings and profits of the corporation shall not be reduced by reason of such distribution.

Income Tax Regs., is invalid in that it negates the provisions of section 1375(d)(1)[6] by requiring a subchapter S corporation not only to be a subchapter S corporation at the time of the distribution but also to maintain its subchapter S status thereafter for the balance of the taxable year.

We are unpersuaded. Regulations must be sustained unless unreasonable and plainly inconsistent with the statute. *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496 (1948). As the Supreme Court noted in *United States v. Correll*, 389 U.S. 299 (1967), "The role of the judiciary in cases of this sort begins and ends with assuring that the Commissioner's regulations fall within his authority to implement the congressional mandate in some reasonable manner." 389 U.S. at 307. Furthermore, this regulation was issued in accordance with specific statutory authorization. Sec. 1375(d)(1). As the Supreme Court stated in *Commissioner v. South Texas Lumber Co., supra,* such specific authorization "gives added reasons why interpretations of the Act and regulations under it should not be overruled by the courts unless clearly contrary to the will of Congress." 333 U.S. at 503. See *DeTreville v. United States*, 445 F.2d 1306, 1311 (4th Cir. 1971).

In this case we conclude that the questioned regulation is plainly consistent with the statute. Section 1375(d) permits a subchapter S corporation to make tax-free distributions of its previously taxed income. However, section 1371(b)[7] defines a subchapter S corporation as one which has made an election under section 1372(a) which is in effect for such taxable year. Section 1372(e)(1) provides that a corporation's election terminates for the entire taxable year in which a nonconsenting

---

[6]Sec. 1375(d)(1) provides:

(1) DISTRIBUTIONS NOT CONSIDERED AS DIVIDENDS.—An electing small business corporation [subchapter S corporation] may distribute, in accordance with regulations prescribed by the Secretary or his delegate, to any shareholder all or any portion of the shareholder's net share of the corporation's undistributed taxable income for taxable years prior to the taxable year in which such distribution is made. Any such distribution shall, for purposes of this chapter, be considered a distribution which is not a dividend, but the earnings and profits of the corporation shall not be reduced by reason of any such distribution.

[7]Sec. 1371(b) provides:

(b) ELECTING SMALL BUSINESS CORPORATION.—For purposes of this subchapter, the term "electing small business corporation" [subchapter S corporation] means, with respect to any taxable year, a small business corporation which has made an election under section 1372(a) which, under section 1372, is in effect for such taxable year.

person becomes a shareholder of the corporation. The regulation questioned by petitioner, sec. 1.1375–4(a), follows this statutory framework by providing that, except for distributions within the 2½ month "grace period" provided in section 1375(f), distributions by a corporation in the year in which its election terminates are not eligible for the special treatment provided in section 1375(d). The regulation follows the statute since the corporation, in the year of the termination of its election, is no longer a subchapter S corporation within the meaning of section 1375(d).[8]

We conclude that termination of a corporation's subchapter S election activates the regular corporation distribution rules of sections 301 and 316. Distributions are deemed to be from current and accumulated earnings and profits until these have been exhausted. Since, in this case, the termination is effective as of the beginning of Music City's taxable year, and since the distribution of $7,157.03 was not within the 2½-month grace period of section 1375(f), we conclude that respondent correctly determined that the distribution on November 11, 1972, constituted a dividend taxable to Eugene.

*Decision will be entered for the respondent.*

---

[8]The validity of sec. 1.1375–4(a), Income Tax Regs., went unquestioned in dictum in other cases. *Clark v. Commissioner,* 58 T.C. 94, 100–101 (1972); *McKelvy v. United States,* 478 F.2d 1217, 1228–1229 (Ct. Cl. 1973).