ROBERT H. GOODALE and BETTY GOODALE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Goodale v. Commissioner
Docket No. 16795-79.
United States Tax Court
T.C. Memo 1981-397; 1981 Tax Ct. Memo LEXIS 349; 42 T.C.M. (CCH) 551; T.C.M. (RIA) 81397; July 30, 1981. Dennis L. Blewitt, for the petitioners. Debre P. Katz, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: The Commissioner determined a deficiency in the petitioners' Federal income taxes for the taxable year 1976 in the amount of $ 5,619.52. The sole issue for decision is whether a corporate distribution made to shareholders two and one-half months after the close of the final year of a Subchapter S election constitutes a tax free distribution of previously taxed, undistributed income or a distribution out of earnings and profits, and thus taxable to shareholders *352 as a dividend. FINDINGS OF FACT Most of the facts have been stipulated by the parties and are found accordingly. The stipulation of facts and the exhibits attached thereto are incorporated by this reference. Robert H. and Betty Goodale, husband and wife (hereinafter "petitioners"), resided in Boulder, Colorado, at the time the petition herein was filed. For all relevant years, petitioners were the sole shareholders of Canton Bio Medical Products, Inc. (hereinafter "Canton, Inc."), and filed joint tax returns. Petitioners, Robert and Betty, were president and secretary, respectively, of Canton, Inc. Canton, Inc. was incorporated in the State of Colorado and became a Subchapter S corporation on February 1, 1971. For the year 1975, Canton, Inc. filed an 1120S return. Taxable income in 1975 was $ 21,636.41. Pursuant to the relevant Code sections, sections 1371-1379, [1] this income passed through the corporation without tax incidence and was taxed directly to petitioners at their ordinary income rate, although the greater portion of such income, $ 20,519.48, was not distributed due to a lack of available cash. The undistributed income retained in the corporate structure *353 reduced retained earnings by such amount and caused a pro tanto increase in petitioners' stock basis. An entry in the corporate ledger recorded the undistributed income as an account payable to petitioner, R. H. Goodale. The relevant corporate figures for the taxable year ending December 31, 1975 are as follows: Taxable Income:
$ 21,636.41
Undistributed Taxable Income
(entered as an account payable
to R. H. Goodale):
20,519.48
Accumulated Earnings
(as of January 1, 1976):
0.00
In 1976, Canton, Inc. elected to revoke its Subchapter S status pursuant to section 1372. The Internal Revenue Service accepted the Canton, Inc. request and the revocation became effective January 1, 1976. Canton, Inc. filed an 1120 return for the 1976 taxable year. Between January 12, 1976 and October 8, 1976, as cash became available, Canton, Inc. distributed $ 20,519.48 to petitioners. Of this amount, $ 6,850.00 was distributed between January 1, 1976 and March 15, 1976. Canton, Inc.'s financial status was such *354 that as of March 15, 1976, any additional distribution would have rendered Canton, Inc. an insolvent corporation pursuant to Colorado Corporation Law. The remaining portion, $ 13,699.48, was distributed between March 15, 1976 and October, 1976. Earnings and profits for the taxable year 1976 were $ 28,506.73. The relevant figures for the taxable year 1976 are as follows: Earnings and profits:
$ 28,506.73.
Cash Distributions to
petitioner R. H. Goodale:
(January 12 - March 15):
[2] $ 6,850.00
(March 15 - October 8):
13,699.48
(total January 12 - October 8):
$ 20,519.48
OPINION During all relevant years petitioners were the sole shareholders of Canton, Inc. and filed joint returns. For the years 1971 through 1975, Canton, Inc. made the Subchapter S election. For the year 1975, Canton, Inc. filed an 1120S return showing $ 21,636.41 in taxable income. Pursuant to the relevant Code sections, sections 1371-1379, this *355 income passed through the corporation without tax incidence and was taxed to petitioners at ordinary income rates. The greater portion of this income $ 20,519.48, was not distributed to petitioners due to a lack of available cash, however, and so remained in the capital structure of the corporation. This previously taxed undistributed taxable income was entered in the corporate ledger as an account payable to petitioner, R. H. Goodale, and carried forth into the succeeding year. In 1976, Canton, Inc. elected to revoke its Subchapter S status, effective January 1, 1976. In this year, as cash became available, a series of distributions totaling $ 20,519.48 was made to petitioner, R. H. Goodale. These distributions can be classified into two time periods. The first period, January 12, 1976 to March 15, 1976, was within two and one-half months of the January 1, 1976 termination of Canton, Inc.'s Subchapter S election. This first period included distributions totaling $ 6,850.00. The second period, March 15, 1976 to October 8, 1976, was not within two and one-half months of the termination of Canton, Inc.'s election. This latter period included distributions totaling $ 13,699.48. *356 Respondent concedes that the first period distributions were made without tax incidence but argues that the latter period distributions are taxed to the shareholders as dividends at ordinary rates; petitioners counter that the entire $ 20,519.48 is a tax-free distribution of previously taxed, undistributed taxable income. Subchapter S is a purely statutory construction enacted into being and governed strictly and exclusively by sections 1371 through 1379. A corporation which elects Subchapter S status is relieved from taxation and its income instead is taxed directly to its shareholders on a pro rata basis, at the individual shareholders' rates. Section 1375(b). Shareholders are taxed on the entire year's income, regardless of whether such income is distributed or retained in the corporate structure. Section 1373(a). Income of a given year which is taxed to the shareholder but retained in the corporation represents a contribution to capital, and is reflected in a pro tanto step-up in stock basis. Section 1376(a). The corporation meanwhile reduces its accumulated earnings and profits in that year by such amount. Section 1377(a). In the year in which the previously taxed *357 undistributed income is distributed, the shareholder takes a pro tanto step-down in stock basis and there is no capital gain tax liability to the extent that the distribution of capital does not exceed basis. Section 301(c)(2). The corporation's earnings and profits are not affected by such distribution of capital. Section 1375(d)(1). Distributions which do not represent dividends represent distributions of capital to the extent thereof. Section 301(c)(2). Normally, distributions of capital must await the exhaustion of accumulated earnings and profits by distribution as dividends. Section 1.316-2(a), Income Tax Regs.Subchapter S corporations, however, are allowed to distribute previously taxed undistributed income prior to the exhaustion and distribution of accumulated earnings. Section 1375(d)(1). Previously taxed undistributed taxable income is thus a special form of capital which is given preferential treatment with respect to the normal sequence of distribution of corporate funds. [3]
*358 Section 1375(f)[4] is a nonelective provision whereby a money distribution of previously taxed undistributed taxable income made within two and one-half months of the close of an electing year is treated as if it had been made on the last day of the corporation's previous tax year. Section 1375(f) is applicable even if the Subchapter S election has been terminated in the subsequent year, and thus provides a two and one-half month grace period in which a corporation which terminates its election retains the special treatment accorded Subchapter S corporations with respect to the preferential distribution of previously taxed undistributed capital. Section 1.1375-4, Income Tax Regs.; Clark v. Commissioner, 58 T.C. 94 (1972). *359 At the end of this two and one-half month grace period, however, the section 1375(d) privilege evaporates if the election has been terminated. Section 1375(d)(1); section 1.1375-4(a), Income Tax Regs. At such time, distributions by a nonelecting corporation are governed by section 301(c), whereby all current and accumulated income must be distributed prior to any distribution of capital. Section 1.316-2, Income Tax Regs. Thus, subsequent to March 15, 1976, any distributions made by Canton, Inc. constitute distributions of earnings and profits to the extent that earnings and profits existed in that year. At the close of 1976, Canton, Inc. had earnings and profits of $ 28,506.73. Thus, the $ 13,699.48 distributed after March 15, 1976, represents distributions from those earnings and profits and are taxable as dividends. Sections 301(c) and 316(a). Petitioner argues that these statutes do not apply because the undistributed income created a debt in 1975 which could be discharged in 1976 prior to the distribution of 1976 earnings and profits. This argument has been rejected by the regulations and by this Court. The regulations *360 state that a distribution of undistributed income must be a distribution of money to come within section 1375(f), and not of stock, of corporate obligation, or by constructive distribution. [5] Thus, a distribution of undistributed taxable income occurs only when actual money is distributed. Sections 1.1375-4(b), 1.1375-6(a)(2)(iii), Income Tax Regs. This Court sustained these regulations in Stein v. Commissioner, 65 T.C. 336, 342 (1975), where we held that "… section 1375(f) mandates that any distribution made within 2 1/2 months of the close of the taxable year… be actually distributed in money, rather than merely reflected in the books of the corporation, in order to constitute a distribution of 'undistributed taxable income.'" Thus, in Stein, we found that an electing corporation could not preserve its right to distribute undistributed income beyond two and one-half months of the termination of the election merely by entering such income in a loans payable account in the corporate ledger. See also McKelvy v. United States, 201 Ct. Cl. 557, 478 F.2d 1217 (1973); *361 Fountain v. Commissioner, 59 T.C. 696 (1973); Clark v. Commissioner, 58 T.C. 94 (1972). Petitioners also argue that the distributions could not have been out of earnings and profits because at the time the distributions were made, Canton, Inc. had no earnings and profits. This argument fails, however, as the Code defines a dividend as a distribution of property made by a corporation to its shareholders "out of its earnings and profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without *362 regard to the amount of the earnings and profits at the time the distribution was made." Section 316(a)(2). In 1976, Canton, Inc. recorded earnings and profits of $ 28,506.73, an amount more than sufficient to cover distributions made in that year. Finally, petitioners argue that the statute works to prejudice them as they cause petitioners to be taxed twice on the same income. Although it is not the function of this Court to enact legislation but merely to apply Congressional mandate, which in this case clearly compels a decision for respondent, we briefly note that the statute does not in fact suffer prejudice or double-taxation upon petitioners. In 1975, petitioners paid tax on certain income which at that time took the character of previously taxed undistributed income, a contribution to capital which reduced the corporation's earnings and profits in that year to zero and which is reflected in the adjusted basis of petitioners' stock. This income did not disappear with the subsequent distribution of 1976 earnings and profits, but remains in the capital structure of the corporation *363 and may be distributed to petitioners in any future year in which the corporation has insufficient current or accumulated earnings and profits to cause part or all of any such distribution to be classed as a dividend under section 316, with a corresponding step-down in petitioners' stock basis. In the event no such distribution ever becomes possible, the amount of the locked-in earnings will nevertheless serve to reduce petitioners' gain upon liquidation of the corporation or sale by petitioners of their stock. It may be true that petitioners caused themselves to forego advantageous tax treatment by their decision to terminate Canton, Inc.'s election. Subchapter S confers special benefits which survive only so long as the election is in effect. Petitioners freely chose to forego such benefits and cannot claim prejudice by the fact that the special statutory benefits evaporated with their decision to terminate. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, unless otherwise specifically indicated.↩
2. There is a $ 30 discrepancy between this total and the amount retained by the corporation at the end of 1975. The two amounts, $ 6,850 and $ 13,699.48 were stipulated by the parties, who furnished no explanation for the discrepancy.↩
3. See Note, "Locked-In Earnings" - How Serious a Problem Under Subchapter S? 49 Va. L. Rev. 1516↩ (1963).
4. SEC 1375(f). Distributions Within 2-1/2 Month Period After Close of Taxable Year.-- (1) Distributions Considered as Distributions of Undistributed Taxable Income.--Any distribution of money made by a corporation after the close of a taxable year with respect to which it was an electing small business corporation and on or before the 15th day of the third month following the close of such taxable year to a person who was a shareholder of such corporation at the close of such taxable year shall be treated as a distribution of the corporation's undistributed taxable income for such year, to the extent such distribution (when added to the sum of all prior distributions of money made to such person by such corporation following the close of such year) does not exceed such person's share of the corporation's undistributed taxable income for such year. Any distribution so treated shall, for purposes of this chapter, be considered a distribution which is not a dividend, and the earnings and profits of the corporation shall not be reduced by reason of such distribution.↩
5. The fact that income may be realized under the doctrine of constructive receipt, in accordance with section 1.451-2(a), Income Tax Regs., is not the equivalent of an actual distribution of money as required by section 1375(f) and the regulations governing the applicability of that section. Stein v. Commissioner, 65 T.C. 336, 341 (1975); Atteburyv. United States, 430 F.2d 1162↩ (5th Cir. 1970).