VINCENT E. OSWALD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Oswald v. Commissioner
Docket No. 24887-84.
United States Tax Court
T.C. Memo 1987-448; 1987 Tax Ct. Memo LEXIS 445; 54 T.C.M. (CCH) 436; T.C.M. (RIA) 87448; September 8, 1987. Steven L. Sablowsky, for the petitioner. Michael A. Yost, Jr., for the respondent. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: In a statutory notice of deficiency dated April 13, 1984, respondent determined a deficiency in the 1980 Federal income tax liability of petitioner and petitioner's now-deceased wife, Eleanor H. Oswald, in the amount of $ 95,806.54. By amendment to his answer, respondent increased the deficiency to $ 105,494. At trial, we granted respondent's motion to dismiss with respect to Eleanor H. Oswald due to her death. After concessions, we must decide whether a check issued to petitioner by his wholly owned corporation constituted a taxable distribution under sections 301 and 316. [1]
FINDINGS OF FACT Many of the facts have been stipulated and are so found. Petitioner *447 resided in Pittsburgh, Pennsylvania, at the time the petition was filed. During the years 1977 through 1980, petitioner was the president and sold shareholder of Shop Materials Company, Inc. ("Shop"). Shop is engaged in the sale and repair of electrical equipment. Shop's taxable year ends on January 31. From its inception in 1957 until January 31, 1976, Shop was treated for Federal income tax purposes as a corporation under subchapter C of the Code. As of January 31, 1976, Shop had accumulated earnings and profits of $ 306,014. In February of 1976, Shop elected to be treated as an electing small business corporation under subchapter S of the Code. The election became effective for its taxable year beginning on February 1, 1976. Also during the years 1977 through 1980, petitioner was a shareholder and chairman of the board of directors of Electric M & R, Inc. ("Electric"), a publicly held corporation. Electric is engaged in the business of manufacturing, selling, and repairing lighting fixtures, electrical motors, and other electrical equipment. During 1980, petitioner and his wife owned 29.04 percent of Electric's common stock and were the corporation's largest shareholders. *448 The second largest shareholder of Electric was petitioner's daughter who owned 5.99 percent of the stock. During 1980, the president of Electric was petitioner's son-in-law. Before 1980, petitioner and Shop had loaned money to Electric to cover operating expenses. As of December 31, 1979, the outstanding principal balance of the loans by Shop to Electric was $ 368,063.67. For the taxable years ending January 31 of 1977, 1978, 1979, and 1980, Shop reported taxable income and undistributed taxable income [2] on its Federal small business corporate income tax returns (Form 1120S) in the following amounts: Annual
Taxable
Undistributed
Taxable Year Ended
Income
Taxable Income
January 31, 1977
$ 106,388
$ 106,388
January 31, 1978
75,321
75,321
January 31, 1979
85,392
5,709
January 31, 1980
56,281
36,281
Cumulative Total
$ 223,699
*449 Pursuant to Shop's status as an electing small business corporation, petitioner properly included the undistributed taxable income for each year in gross income on his and his wife's joint Federal income tax returns. Petitioner also properly reported, as dividend income, distributions from Shop that were made out of the current year's earnings and profits for the taxable years ending January 31, 1979 and 1980. As of January 31, 1980, the books and records of Shop reflected $ 193,986.05 of cumulative undistributed taxable income previously taxed ("PTI") (which included the $ 36,281 of undistributed taxable income for the year ending January 31, 1980). In February of 1980, Shop terminated its election to be treated as an electing small business corporation effective February 1, 1980. Acting on the advice of their accountant and with the approval of the bank in which they maintained their checking accounts, petitioner, Shop, and Electric engaged in a series of transactions which were designed to effect a tax-free distribution to petitioner of the $ 193,986.05 in PTI that was reflected on Shop's books and records as of January 31, 1980. [3] The transactions are described below. *450 On April 8, 1980, Shop issued a check to petitioner in the amount of $ 193,986.05. Shop recorded the payment of the $ 193,986.05 as a distribution to petitioner. Petitioner deposited the check in his personal checking account, and the check was credited by the bank to his account. On the same day, petitioner loaned $ 210,000 to Electric by issuing a personal check in that amount in favor of Electric. The amount of the check was debited to petitioner's checking account and credited to Electric's corporate checking account at the same bank. In exchange, Electric issued a recourse demand promissory note dated April 8, 1980, in favor of petitioner, in the amount of $ 963,265.66. The principal amount of the promissory note represented the outstanding balance of loans petitioner had made to Electric in years before 1980 in the *451 total amount of $ 753,265.66, plus the $ 210,000 loan made on April 8, 1980. The promissory note bore a floating interest rate at one percent over prime and was secured by a first lien on substantially all of Electric's assets. The $ 210,000 loan was reflected as a current liability on Electric's audited financial statements for the year ending December 31, 1980. In the last relevant transaction that occurred on April 8, 1980, Electric issued a check to Shop in the amount of $ 225,000. This check was designated as a payment of interest by Electric on loans Electric had received from Shop in earlier years and was so described in Electric's 1980 annual report. The $ 225,000 check was debited to Electric's checking account and credited to Shop's checking account by the bank. The balance in the respective checking accounts of petitioner, Shop, and Electric immediately before the exchange of the checks described above was as follows: Account balance
on April 8, 1980
Petitioner's
$ 13,363.19
Shop's
31,999.50
Electric's
26,625.43
By prearrangement, the bank covered the checks described above that were issued by petitioner, Shop, and Electric *452 by simultaneously crediting their respective accounts with the amount of the checks they each received from the other. [4]
On his and his wife's 1980 joint Federal income tax return, petitioner did not include the $ 193,986.05 check received from Shop in gross income. Instead, petitioner treated the payment from Shop as a nontaxable distribution of PTI. In his notice of deficiency and by amendment to his answer herein, respondent determined that the first $ 36,281.05 of the $ 193,986.05 check from Shop represented a tax free distribution to petitioner of Shop's undistributed taxable income for Shop's immediately preceding taxable year. Respondent determined, however, that the $ 157,705 balance of the $ 193,986.05 check constituted a taxable dividend to petitioner distributed out of current and accumulated earnings and profits of Shop as of January 31, 1981. *453 OPINION Dividends actually distributed by an electing small business corporation must be included in the income of shareholders under the same rules as dividends distributed by regular corporations. Sec. 1.1372-1(c)(2) and (7), Income Tax Regs.; DeTreville v. United States,445 F.2d 1306, 1309 (4th Cir. 1971); Clark v. Commissioner,58 T.C. 94, 99 (1972); Roesel v. Commissioner,56 T.C. 14, 21-22 (1971). Each shareholder of an electing small business corporation also is required to include in gross income the additional amount that would have been received as a dividend if on the last day of the taxable year the corporation had distributed pro rata to each shareholder an amount equal to its "undistributed taxable income" at the end of each taxable year. Sec. 1373(b); Rosel v. Commissioner, supra at 22. "Undistributed taxable income" generally means the taxable income of the corporation minus the taxable distributions made during the taxable year. Sec. 1373(c). [5]
*454 Once the undistributed taxable income of an electing small business corporation has been taxed to the shareholders, it becomes PTI and is subtracted from the earnings and profits account and treated like a capital account by the corporation and its shareholders. Clark v. Commissioner, supra at 99-100. After exhausting its earnings and profits for the current year, an electing small business corporation is permitted to make money distributions to its shareholders out of PTI as a nontaxable distribution. Sec. 1375(d)(1); [6]sec. 1.1375-4(b), Income Tax Regs.; Clark v. Commissioner, supra at 100. This is in contrast to the rules applicable to regular corporations that require accumulated earnings and profits from prior years to be exhausted, as well as current year's earnings and profits, before a nontaxable distribution of capital can occur. Sec. 1.316-2(a), Income Tax Regs.
*455 If an electing small business corporation terminates its election to be taxed under subchapter S, distributions subsequent to the effective date of the termination are governed by the regular corporation distribution rules of sections 301 and 316, unless they qualify for the limited exception mentioned below. Sec. 1.1375-4(a), Income Tax Regs.; Estate of Kirk v. Commissioner,70 T.C. 771, 775 (1978); affd. 634 F.2d 1048 (6th Cir. 1980); Clark v. Commissioner, supra at 101. Thus, a distribution that would have been nontaxable under section 1375(d), as a nontaxable distribution of PTI, if the subchapter S election had remained in effect, may be taxable as a dividend out of accumulated earnings and profits if made after the election is terminated. McKelvy v. United States,201 Ct. Cl. 557, 575, 478 F.2d 1217, 1229 (1973). See also B. Bittker and J. Eustice, Federal Income Taxation of Corporations and Shareholders, par. 6.08, p. 6-35 (4th ed. 1979). An exception is provided for distributions made in money and made within two and one-half months after the termination of a subchapter S election. Such distribution may *456 still qualify as nontaxable distributions but only to the extent of undistributed taxable income attributable to the immediately preceding year. Sec. 1375(f)(1). [7] Based on this rule, as previously explained, respondent treated the portion of Shop's April 8, 1980, distribution that was attributable to Shop's 1980 taxable year (namely $ 36,281.05) as a nontaxable distribution of undistributed taxable income. The $ 157,705 balance of the April 8, 1980, distribution to petitioner was treated as a taxable dividend because the source thereof was deemed to be the current and accumulated earnings and profits on Shop's books as of January 31, 1981. Realizing that the major portion of the distribution Shop made in April of 1980 will not qualify as a nontaxable distribution of PTI, petitioner now attempts to disavow the entire distribution on the grounds that it lacked economic substance. *457 On the facts before us, we find that a distribution occurred. A check was issued by Shop reflecting payment to petitioner of the $ 193,986.05. It was deposited by petitioner into his personal bank account. The check was honored by the bank, and petitioner used the proceeds thereof to make an investment (namely, the $ 210,000 loan to Electric). Electric reflected the $ 210,000 as a loan on its audited financial statements, and Electric used the loan proceeds to make a payment to Shop of accrued interest. Shop used the interest income it received as the source of the funds to cover its check to petitioner. Without question, a distribution was intended by Shop and by petitioner. Although other transactions were arranged to occur simultaneously with petitioner's receipt of the distribution, the fact of the distribution is not negated. We have found no authority that would support a recharacterization of the distribution merely because the intended tax benefits are later determined to be unavailable. To the contrary, a number of cases involving fact situations similar to those herein (namely, the termination of a subchapter S election followed by attempts to make distributions *458 that qualify as nontaxable distributions of PTI) have held that the distributions were governed by the regular corporation distribution rules of sections 301 and 316. See DeTreville v. United States, supra;McKelvy v. United States, supra;Fountain v. Commissioner,59 T.C. 696 (1973); Clark v. Commissioner, supra;Roesel v. Commissioner, supra;Goodale v. Commissioner,T.C. Memo. 1981-397, 42 T.C.M. 551, 50 P-H Memo T.C. par. 81,397. Petitioner argues that to tax him on the April 8, 1980, distribution (in excess of the immediately preceding year's undistributed taxable income) will result in double taxation. To the extent, however, that the April 8, 1980, distribution from Shop is taxable, it is attributable to the presence of Shop's current and accumulated earnings and profits at the end of the taxable year in which the distribution was made, and those current and accumulated earnings and profits were never before taxed. The error in petitioner's "double taxation" argument is further explained in Goodale v. Commissioner, supra, as follows: In 1975, petitioners paid tax on certain *459 income which at that time took the character of previously taxed undistributed income, a contribution to capital which reduced the corporation's earnings and profits in that year to zero and which is reflected in the adjusted basis of petitioners' stock. This income did not disappear with the subsequent distribution of 1976 earnings and profits, but remains in the capital structure of the corporation and may be distributed to petitioners in any future year in which the corporation has insufficient current or accumulated earnings and profits to cause part or all of any such distribution to be classed as a dividend under section 316, with a corresponding step-down in petitioners' stock basis. In the event no such distribution ever becomes possible, the amount of the locked-in earnings will nevertheless serve to reduce petitioners' gain upon liquidation of the corporation or sale by petitioners of their stock. [42 T.C.M. at 504, 50 P-H Memo T.C. par. 81,397 at 1458-81.] Also with regard to petitioner's double taxation argument, see Note, "'Locked-In Earnings' -- How Serious A Problem Under Subchapter S?," 49 Va. L. Rev. 1516, 1526-1530 (1963). For the *460 foregoing reasons, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as in effect during the year in issue. ↩
2. As explained more fully at pp. 7-8, infra,↩ "undistributed taxable income" is that portion of the taxable income of a subchapter S corporation that is retained by the corporation at the close of the taxable year but that is included in the gross income of the corporation's shareholders. 3. As indicated in the chart on page 3, the cumulative total amount of Shop's PTI and undistributed taxable income should have been $ 223,699. Due to a bookkeeping error, the books and records of Shop reflected a cumulative total of $ 193,986.05, and it was that amount that Shop attempted to distribute in April of 1980 as a tax-free distribution. ↩
4. Shop also issued to petitioner on April 8, 1980, a check for $ 28,053.26 which the bank credited to petitioner's account simultaneously with the debits and credits associated with the other checks. The treatment of the $ 28,053.26 check has not been raised for Federal income tax purposes and is not in dispute in this proceeding. ↩
5. Sec. 1373(c) defines "undistributed taxable income" as -- taxable income * * * minus * * * the amount of money distributed as dividends during the taxable year, to the extent that any such amount is a distribution out of earnings and profits of the taxable year as specified in section 316(a)(2). ↩
6. Sec. 1375(d)(1) provides as follows: (d) Distribution of Undistributed Taxable Income Previously Taxed to Shareholders. -- (1) Distributions not considered as dividends. -- An electing small business corporation may distribute, in accordance with regulations prescribed by the Secretary, to any shareholder all or any portion of the shareholder's net share of the corporation's undistributed taxable income for taxable years prior to the taxable year in which such distribution is made. Any such distribution shall, for purposes of this chapter, be considered a distribution which is not a dividend, but the earnings and profits of the corporation shall not be reduced by reason of any such distribution. ↩
7. Sec. 1375(f)(1) provides as follows: (f) Distributions Within 2 1/2-Month Period After Close of Taxable Year. -- (1) Distributions considered as distributions of undistributed taxable income. -- Any distribution of money made by a corporation after the close of a taxable year with respect to which it was an electing small business corporation and on or before the 15th day of the third month following the close of such taxable year to a person who was a shareholder of such corporation at the close of such taxable year shall be treated as a distribution of the corporation's undistributed taxable income for such year, to the extent such distributions (when added to the sum of all prior distributions of money made to such person by such corporation following the close of such year) does not exceed such person's share of the corporation's undistributed taxable income for such year. Any distribution so treated shall, for purposes of this chapter, be considered a distribution which is not a dividend, and the earnings and profits of the corporation shall not be reduced by reason of such distribution. ↩