SHELLEY STEIN AND RUTH STEIN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8815-73.     Filed November 12, 1975.

*Solomon E. Star,* for the petitioners.
*Peter W. Mettler,* for the respondent.

---

[1] Ruth Stein is a party to this action solely by virtue of having filed a joint income tax return with her husband for the years in question.

## OPINION

The petitioner owned 70 percent of the stock of Security Printing. For the taxable years 1959 to 1968 inclusive, Security Printing qualified as a corporation electing to be taxed under subchapter S. That election was terminated for the taxable year 1969. No election was filed for the taxable year 1970.

As of January 1, 1969, Security Printing issued an additional 100 shares of capital stock at a stated value of $875 per share, thereby crediting $87,500 to the capital account. The remaining undistributed taxable income, which had been reported as income by the stockholders of Security Printing during the period that it qualifed as a subchapter S corporation, was credited to a loans payable account showing a balance due petitioner of $26,088.30.

From time to time, petitioner withdrew funds from the loans payable account. Between March 16 and December 31, 1969, petitioner's withdrawals amounted to $5,271.37. During the taxable year 1970, petitioner's withdrawals amounted to $15,880.46. Petitioner seeks to exclude such withdrawals from taxable income as representing amounts previously reported for the taxable years that Security Printing qualified as a subchapter S corporation. Respondent has treated such withdrawals as the payment of dividends chargeable to the earnings and profits of Security Printing for the taxable years in which funds were withdrawn, in accordance with sections 301(c)(1) and 316(a).

Petitioner contends that the amounts credited to the loan account as of January 1, 1969, were the equivalent of distributions within the 2½-month period following the close of the taxable year 1968 to which section 1375(f) is applicable, and are

thereby chargeable to the amounts previously reported by petitioner under subchapter S. Respondent contends that section 1375(f) is inapplicable since the mere crediting of the allocable earnings and profits to the loan account did not meet the requirement of a "distribution of money" for purposes of that section.[3]

The question thus presented for decision is whether a distribution of Security Printing's earnings and profits for the taxable year 1968 was effected on January 1, 1969, when the loans payable account was set up on its books. In his regulations, the respondent has limited the phrase "distribution of money" in section 1375(f) so as to exclude not only a distribution of property other than money, but any obligation of the corporation which constitutes such property. Sec. 1.1375-6(a)(2)(iii), Income Tax Regs. These regulations have been sustained by the courts. *McKelvy v. United States,* 201 Ct. Cl. 557, 478 F.2d 1217 (1973); *C. D. Fountain,* 59 T.C. 696 (1973); *Randall N. Clark,* 58 T.C. 94 (1972).

The petitioner did not present in evidence the resolution of the board of directors of Security Printing or any other proof with respect to the authorization by the directors or the stockholders for the capitalization of a portion of the undistributed taxable income and credit of the balance to the loans payable account. There is no proof that Security Printing ever declared a cash dividend. Even if, however, the record did show that a dividend was declared payable in money with the understanding, expressed or implied, that the amount thereof would be loaned back to the

---

[3] SEC. 1375. SPECIAL RULES APPLICABLE TO DISTRIBUTIONS OF ELECTING SMALL BUSINESS CORPORATIONS.

(f) DISTRIBUTIONS WITHIN 2½-MONTH PERIOD AFTER CLOSE OF TAXABLE YEAR.—

(1) DISTRIBUTIONS CONSIDERED AS DISTRIBUTIONS OF UNDISTRIBUTED TAXABLE INCOME.—Any distribution of money made by a corporation after the close of a taxable year with respect to which it was an electing small business corporation and on or before the 15th day of the third month following the close of such taxable year to a person who was a shareholder of such corporation at the close of such taxable year shall be treated as a distribution of the corporation's undistributed taxable income for such year, to the extent such distribution (when added to the sum of all prior distributions of money made to such person by such corporation following the close of such year) does not exceed such person's share of the corporation's undistributed taxable income for such year. Any distribution so treated shall, for purposes of this chapter, be considered a distribution which is not a dividend, and the earnings and profits of the corporation shall not be reduced by reason of such distribution.

(2) SHARE OF UNDISTRIBUTED TAXABLE INCOME.—For purposes of paragraph (1), a person's share of a corporation's undistributed taxable income for a taxable year is the amount required to be included in his gross income under section 1373(b) as a shareholder of such corporation for his taxable year in which or with which the taxable year of the corporation ends. * * *

corporation, the distribution would not qualify as a distribution of money made within 2½ months of the prior taxable year. *McKelvy v. United States, supra.* Petitioner's problem in meeting the requirements of section 1.1375-6(a)(2)(i), Income Tax Regs., undoubtedly stems from the fact that as of January 1, 1969, it was not contemplated that Security Printing would lose its status as a subchapter S corporation. There was no reason to firm up the distribution at that time. When such status was lost to Security Printing, by inadvertance or otherwise, it was too late. The balance remaining in the loans payable account on March 15, 1969, had not been distributed in money.

The petitioner argues that the mere setting up of the loans payable account resulted in the realization of income by the petitioner as of January 1, 1969, under the doctrine of constructive receipt as set forth in section 1.451-2(a), Income Tax Regs. However, petitioner's right to withdraw the amounts credited to his account seems to have been predicated solely on the fact that he owned 70 percent of the stock of Security Printing. No evidence was presented with respect to any agreement, understanding, or resolution which spelled out either the purpose of the loans payable account or the right of the petitioner to withdraw such funds. Finally, the fact that income may be realized under the doctrine of constructive receipt, in accordance with section 1.451-2(a), Income Tax Regs., may not result in an actual distribution of money as required by section 1375(f) and the regulations governing the applicability of that section. See *Attebury v. United States,* 430 F.2d 1162 (5th Cir. 1970).

Finally, petitioner contends that the withdrawal of $5,271.37 received in 1969 and the withdrawal of $2,220.12 of the $15,880.46 received in 1970 constituted repayment of a loan from petitioner to Security Printing. Petitioner arrived at this amount by taking the difference between the amount of the loans payable account and petitioner's share of Security Printing's subchapter S income for the taxable year 1968. No evidence was presented at trial to account for the source of these funds. Since the evidence presented was not inconsistent with the fact that the loans payable account was formed from undistributed taxable income accumulated prior to taxable year 1968, plus the income of taxable year 1968, petitioner has not met his burden of proof with respect to this contention. Respondent's determination is

presumptively correct. Rule 142(a), Tax Court Rules of Practice and Procedure.

In our opinion section 1375(f) mandates that any distribution made within 2½ months of the close of the taxable year 1968 be actually distributed in money, rather than merely reflected in the books of the corporation, in order to constitute a distribution of "undistributed taxable income." Since the current earnings and profits for taxable years 1969 and 1970 exceeded the amounts withdrawn after March 15, 1969, the distributions are dividends taxable under section 301(c). The respondent's determination must, therefore, be sustained.

*Decision will be entered for the respondent.*