E-B GRAIN CO., ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 4291–82—4293–82.     Filed August 3, 1983.

---

[1]Cases of the following petitioners are consolidated herewith: Kirby L. Everette and Dorothy G. Everette, docket No. 4292–82; Marvin R. Everette and Bernice J. Everette, docket No. 4293–82.

*Linwood L. Davis* and *Gregory L. Smith*, for the petitioners.
*Alan I. Weinberg, Theodore J. Kletnick*, and *Cynthia J. Mattson*, for the respondent.

## OPINION

KÖRNER, *Judge*: In these consolidated cases, respondent determined deficiencies in Federal income tax as follows:

| Docket No. | Petitioner | Year | Deficiency |
|---|---|---|---|
| 4291–82 | E-B Grain Co., Inc. | 1978 | $130,121.37 |
| 4292–82 | Kirby L. Everette | 1976 | 82,369.92 |
|  | and Dorthy G. Everette | 1977 | 63,771.57 |
|  |  | 1978 | 351.00 |
| 4293–81 | Marvin R. Everette | 1976 | 83,616.89 |
|  | and Bernice J. Everette | 1977 | 64,059.39 |
|  |  | 1978 | 378.00 |

After concessions by both parties,[2] the sole issue for decision is whether distributions made on October 17, 1977, by E-B Grain Co., Inc. (hereinafter E-B Grain), were timely under the provisions of section 1375(f)(1).[3]

This case was submitted fully stipulated pursuant to Rule 122. The stipulations of fact and attached exhibits are incorpo-

---

[2] Both parties either conceded or settled the issues pertaining to several commodity transactions; the losses related to and the fair rental value of a beach cottage; and depreciation, finance charges, and rental expenses relating to E-B Grain.

[3] All statutory references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue, and all references to Rules are to the Tax Court Rules of Practice and Procedure.

rated herein by this reference. The pertinent facts are summarized below.

Kirby L. Everette (hereinafter Kirby) and Dorothy G. Everette, husband and wife, resided in Battleboro, N.C., at the time of the filing of their petition herein. Marvin R. Everette (hereinafter Marvin) and Bernice J. Everette, husband and wife, resided in Rocky Mount, N.C., at the time of the filing of their petition herein. E-B Grain was a corporation whose principal place of business was in Battleboro, N.C., when it filed its petition herein. (Hereinafter when "petitioners" is used, it will collectively refer to all the above-mentioned parties.)

Kirby and Marvin filed their calendar year joint Federal income tax returns for the year 1977 with the Office of the Internal Revenue Service located in Memphis, Tenn., using the cash receipts and disbursements method of accounting. E-B Grain filed its Federal corporate income tax returns, based on a fiscal year ending July 31, with the Internal Revenue Service located in Memphis, Tenn.

During their taxable year 1977, Kirby and Marvin each owned 50 percent of the outstanding shares of E-B Grain. E-B Grain was an electing small business corporation within the meaning of section 1372 for its fiscal years ending July 31, 1976 and 1977. The small business election was revoked for E-B Grain's fiscal year ending July 31, 1978.

The 15th day of the 3d month following the close of E-B Grain's fiscal year ending July 31, 1977 (i.e., October 15, 1977), fell on a Saturday. E-B Grain was closed for business on that date.

On Monday, October 17, 1977, E-B Grain made two cash distributions of $50,000, one to Kirby and the other to Marvin, with respect to their stock interests. E-B Grain made each distribution through a company check made out to the order of the respective payees, and dated October 17, 1977. The two $50,000 distributions did not exceed Kirby and Marvin's respective shares of E-B Grain's undistributed taxable income for its fiscal year ending July 31, 1977. At all times relevant herein, E-B Grain had current and accumulated earnings and profits in excess of $100,000.

In their 1977 returns, Kirby and Marvin each treated the $50,000 distribution from E-B Grain as distributions of previ-

ously taxed income pursuant to section 1375(d) and therefore omitted these amounts from taxable income. Respondent determined that the distributions were taxable dividends received from E-B Grain and accordingly increased each petitioner's income by $50,000. It is respondent's position that these distributions were not timely within the intendment of section 1375(f)(1) and must therefore be characterized under section 301 as taxable dividends.

The right of an electing small business corporation to make a nontaxable distribution of previously taxed income under section 1375(d) expires when the company's election is terminated. See sec. 1375(d)(2)(A); secs. 1.1375–4(a), 1.1375–6, Income Tax Regs. Since E-B Grain's election was terminated for its fiscal year ending July 31, 1978, distributions made by E-B Grain during that year must be characterized by reference to section 301 unless such distributions were timely under section 1375(f)(1). See *Stein v. Commissioner*, 65 T.C. 336 (1975).

Section 1375(f)(1), as in effect during the years in issue, provided as follows:[4]

Any distribution of money made by a corporation after the close of a taxable year with respect to which it was an electing small business corporation and on or before the 15th day of the third month following the close of such taxable year to a person who was a shareholder of such corporation at the close of such taxable year shall be treated as a distribution of the corporation's undistributed taxable income for such year, to the extent such distribution (when added to the sum of all prior distributions of money made to such person by such corporation following the close of such year) does not exceed such person's share of the corporation's undistributed taxable income for such year. Any distribution so treated shall, for purposes of this chapter, be considered a distribution which is not a dividend, and the earnings and profits of the corporation shall not be reduced by reason of such distribution.

Section 7503 provides in pertinent part:

When the last day prescribed under authority of the internal revenue laws for performing any act falls on Saturday, Sunday, or a legal holiday, the performance of such act shall be considered timely if it is performed on the next succeeding day which is not a Saturday, Sunday, or a legal holiday * * *

---

[4] The Subchapter S Revision Act of 1982 significantly altered the rules applicable to electing small business corporations. See Pub. L. 97–354, 96 Stat. 1669. These new rules are effective generally for tax years beginning after 1982.

Respondent contends that the two $50,000 distributions should be treated as taxable dividend distributions under section 301 because the distributions were made more than 2 months and 15 days after the close of E-B Grain's fiscal year ending July 31, 1977, and after E-B Grain's election under section 1372 had been revoked. Respondent asserts that section 7503 is meant only to apply with respect to procedural acts and is not intended to extend the statutory grace period provided by section 1375(f)(1).[5]

Petitioners contend that even though the distributions were made outside of the 2-month and 15-day period stated in section 1375(f)(1), section 7503 applies to make the transaction timely because the last day for performance fell on a Saturday when E-B Grain was closed for business. As such, petitioners maintain that, pursuant to section 7503, the distributions were timely under section 1375(f)(1) when made on Monday, the next day that was not a Saturday, Sunday, or legal holiday. We hold for petitioners.

Statutory language should, where possible, be accorded its ordinary and usual meaning. *Malat v. Riddell*, 383 U.S. 569, 571 (1966); *Dittler Bros., Inc. v. Commissioner*, 72 T.C. 896, 915 (1979), affd. without published opinion 642 F.2d 1211 (5th Cir. 1981). Section 7503 provides that when the last day prescribed for performing "any act" under the internal revenue laws falls on a Saturday, Sunday, or legal holiday, it shall be considered timely if performed on the next succeeding day that is not a Saturday, Sunday, or legal holiday. On its face, the statute does not limit the performance of "any act" to the performance of acts that constitute "procedural steps in connection with the determination, collection or refund of taxes," which is respondent's position herein. To the contrary, section 7503, by its terms, applies with respect to any act prescribed by the internal revenue laws, which has a broad connotation. We thus find the plain language of the statute to be contrary to respondent's position.

---

[5]This is the position taken by respondent in a published ruling. See Rev. Rul. 72–541, 1972–2 C.B. 645. Of course, we are not bound by positions taken by respondent in Revenue Rulings. See *Dixon v. United States*, 381 U.S. 68, 73–74 (1965); *Jacklin v. Commissioner*, 79 T.C. 340, 351 n.13 (1982).

Furthermore, we already carefully have considered and rejected respondent's assertion that section 7503 was intended to apply only to procedural acts. In *Snyder v. Commissioner*, T.C. Memo. 1981–216, respondent argued that section 7503 could not be employed to extend the 12-month liquidation period required to be satisfied in order for a corporation to come within the terms of section 337(a). In rejecting respondent's contention that section 7503 was intended to apply only to procedural acts, we pointed out that respondent's position could only be supported by a selective and distorted reading of the relevant committee reports. Thus we stated:

> The main portions of the committee reports speak in terms of an "act * * * to be performed in a district office or *elsewhere.*" (emphasis added) [ * * * ] The more detailed explanations use the word "required" in lieu of the word "prescribed" used in the statute itself and speak in terms of an "act * * * to be performed at any office of the United States." [ * * * ] Respondent's regulations pick up the word "required" instead of the word "prescribed," but not the language relating to "any office of the United States," and give, *as examples*, situations consistent with the rationale of Rev. Rule 72–541, *supra.* * * * We think respondent reads the language of section 7503 too narrowly. [*Snyder v. Commissioner, supra.* Emphasis in original; citations omitted.]

Respondent is not unaware of our holding in *Snyder*, but he argues that the conclusion we reached in that case is flawed. In support of this contention, respondent points to certain legislative history accompanying section 267(e)[6] which was not considered by the Court in *Snyder*. Respondent argues that upon a perusal of the relevant legislative history under section 267(e), we will refuse to follow *Snyder* in the future. We are, however, not so inclined.

Congress enacted section 267(e) to allow an extension to the required time period contained in section 267(a)(2). Section 267(a)(2), by negative inference, permits a deduction for certain expenses and interest between related taxpayers if paid within 2½ months after the close of the taxable year for

---

[6]Sec. 267(e) provides in pertinent part:

For purposes of subsection (a)(2)—

(1) Where the last day of the 2½ month period falls on Saturday, Sunday, or a legal holiday, such last day shall be treated as falling on the next succeeding day which is not a Saturday, Sunday, or a legal holiday, and

(2) the determination of what constitutes a legal holiday shall be made under section 7503 with respect to the payor's return of tax under this chapter for the preceeding taxable year.

which the deduction is claimed. The extension allowed by section 267(e) applies if the last day for performance under section 267(a)(2) falls on a Saturday, Sunday, or legal holiday, and gives the taxpayer until the next succeeding day which is not a Saturday, Sunday, or legal holiday to satisfy the provisions of section 267(a)(2). Congress added section 267(e) in specific response to Rev. Rul. 72–541, 1972–2 C.B. 645. S. Rept. 95–797, at 2–3 (1978), 1978–2 C.B. 439. This Revenue Ruling held that section 7503 did not apply to section 267(a)(2), on the ground that section 7503 only applies to procedural acts and not transactional occurrences. Rev. Rul. 72–541, *supra*, 1972–2 C.B. at 646.

Respondent maintains that Congress' statutory nullification of Rev. Rul. 72–541 is evidence that Congress agreed with respondent's narrow interpretation of section 7503 in all other contexts. Respondent argues that if this was not the case, Congress would have enacted statutory provisions which would apply section 7503 to *all* nonprocedural acts.

However, we find respondent's rather convoluted reasoning to be unsupported by either the legislative history of section 267(e), or by ordinary reason. There is no indication in the rather sparse committee reports accompanying section 267(e) that Congress approved of respondent's interpretation of section 7503 as a general proposition. See H. Rept. 95–645, at 3–4 (1978); S. Rept. 95–797, *supra*. These reports simply note that the Internal Revenue Service has taken the position that section 7503 does not apply to extend the time of performance under section 267(a)(2), and state that the extended period for timely performance allowed by section 7503 should apply in this context. We cannot infer from these comments that Congress endorsed the proposition that section 7503 does not apply to *all other* nonprocedural acts.

Moreover, we think that Congress' action in enacting section 267(e) was simply an isolated response to a very specific position taken by respondent in Rev. Rul. 72–541, *supra*, which Congress considered to be erroneous. To hold that by specifically rejecting respondent's published position, Congress was in fact approving its broader application outside of section 267 goes beyond ordinary reason and we must reject respondent's invitation in this regard. We therefore reaffirm our holding in

*Snyder* that section 7503 cannot legitimately be read to apply only to procedural acts.

As a final point, we note that even assuming arguendo that respondent's position with respect to section 7503 had merit, petitioner's position nevertheless derives support from non-statutory sources. In *Campbell Chain Co. v. Commissioner*, 16 T.C. 1402 (1951), a Court-reviewed case decided prior to the enactment of section 7503, and involving the timeliness of a contribution to an employees' pension trust under section 23(p)(1)(E) of the Internal Revenue Code of 1939, we held that considerations of fairness and convenience dictated that a nonprocedural statutory period should be extended to the following business day where the last day of the period fell on a legal holiday.

As we stated in *Snyder v. Commissioner, supra,* "there is no indication that section 7503 was intended to be the exclusive vehicle for dealing with the effect of a time period expiring on a legal holiday." Thus the *Campbell* rationale continues to have vitality and the same principles of fairness and convenience which were presented in *Campbell* are presented with equal force in the present case, and dictate a similar result herein.

We accordingly conclude that Kirby and Marvin received a timely distribution under section 1375(f)(1) since section 7503, as well as the rationale of *Campbell Chain Co. v. Commissioner, supra,* extends to their transactions. This conclusion prevents the "harsh and accidental" result[7] we think Congress sought to avoid by enacting section 7503.

To reflect the foregoing,

*Decisions will be entered under Rule 155.*

---

[7]See *Sherwood Bros. v. District of Columbia,* 113 F.2d 162, 163 (D.C. Cir. 1940).