SAMUEL L. PRICE AND CARMEN L. PRICE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Price v. Commissioner
Docket No. 19073-80.
United States Tax Court
T.C. Memo 1983-617; 1983 Tax Ct. Memo LEXIS 175; 46 T.C.M. (CCH) 1607; T.C.M. (RIA) 83617; September 28, 1983. Gary R. Pearson, for the petitioners. J. Anthony Hoefer, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined a deficiency of $10,019 in petitioners' Federal income tax for the taxable year 1976. The issue is whether a certain distribution of money to petitioners by their electing small business corporation satisfies the requirements of section 1375(f), [1] so as to be treated as the receipt of previously taxed "undistributed taxable income" rather than as taxable dividends under sections 301 and 316. [2]
*178 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners Samuel L. Price and Carmen L. Price, husband and wife, resided at 3512 South 75th Street, Lincoln, Nebraska, at the time they filed the petition in this case. They filed a joint Federal income tax return for taxable year 1976 with the Internal Revenue Service Center in Ogden, Utah. Beefeaters, Inc., (Beefeaters), is a Nebraska corporation, incorporated in 1972 and doing business as "Mr. Steak No. 555," with its principal place of business at 5505 "O" Street, Lincoln, Nebraska. From 1973 until the present, petitioner Samuel L. Price has been the president, chairman of the board, owner, and manager of Beefeaters. Petitioner Carmen L. Price has been the secretary-treasurer of Beefeaters from 1975 to the present. At all times during 1976, petitioner Samuel L. Price owned at least 99 percent of the outstanding voting stock of Beefeaters. In 1972, Beefeaters purchased a "Mr. Steak" franchise. Subsequent to that date, Beefeaters opened and operated the Mr. Steak franchise in Lincoln, Nebraska. *179 Mr. Steak is a steak-and-potatoes chain restaurant, the preparation and serving of food being the main service or product. Beefeaters has no financial ventures other than the Mr. Steak franchise. The principal office of the franchisor, Mr. Steak, is located in Denver, Colorado. The franchisor offers various services to its franchisees. If a franchisee so elects, the franchisor will perform partial or full accounting services for the franchisee. Franchisor has set up a subsidiary corporation (Subsidiary) to perform such accounting functions. Beefeaters elected to have Subsidiary perform all of its franchise's accounting functions. Beefeaters posted the invoices for accounts payable, payroll, etc., and then mailed them to Subsidiary. Subsidiary was authorized to write checks on Beefeaters' local bank in Lincoln, Nebraska, Gateway Bank & Trust Company, Account No. 120-761. Petitioners made deposits of cash receipts from their franchise into their account at Gateway Bank. While petitioner Samuel L. Price was also authorized to draw checks on their account at Gateway Bank, he had only exercised his authority to draw checks on Gateway Bank two or three times, these being in *180 1972 before any printed checks were available when he wrote two or three counterchecks on the account. Thereafter, neither petitioner nor anyone else, except Subsidiary, wrote checks on the Gateway account. The normal way for Beefeaters to pay its bills or obligations was to notify Subsidiary of the name of the recipient and amount of the payment. Subsidiary would then make payment on the debt or obligation. This was the customary and usual business practice followed by Beefeaters. Except for the two or three checks written by Samuel L. Price in 1972, all of Beefeaters' obligations were paid in this manner. The invoices were mailed weekly to Subsidiary in Denver, Colorado. Subsidiary would then issue the checks and mail them back to Beefeaters or other appropriate payees. A period of approximately two weeks usually passed from the time Beefeaters requested Subsidiary to issue a check until the time such check was actually issued. At some time during the period from December 1975 to March of 1976, Beefeaters' board of directors (petitioners), acting on the advice of Beefeaters' certified public accountant, met and unanimously voted to declare a dividend in the amount *181 of $31,600. [3] Pursuant to Beefeaters' normal practice, Subsidiary was notified by mail to issue the dividend check. The record does not establish when Subsidiary was so notified. The dividend check was issued by Subsidiary on April 2, 1976, and cashed by petitioners on April 5, 1976. *182 At all times relevant herein, the balance in Beefeaters' account with Gateway Bank was in excess of $31,600. From its inception in 1972 until the end of its calendar year 1975, Beefeaters had properly elected to be taxed as a small business corporation under Subchapter S of the 1954 Internal Revenue Code. Effective as of January 1, 1976, the beginning of its 1976 taxable year, Beefeaters terminated its election to be taxed as a small business corporation under Subchapter S. Such termination was made upon the advice of Beefeaters' certified public accountant, who advised Beefeaters of the tax ramifications of the change in status. Beefeaters had current earnings and profits of $18,899 for calendar year 1976 ($23,202 taxable income, less $4,303 Federal income taxes). Petitioners did not report any part of the $31,600 distribution as a dividend in their 1976 joint Federal income tax return. In his statutory notice of deficiency, respondent determined that petitioners had $18,899 of unreported taxable dividend income for 1976. OPINION This case involves the proper tax treatment of a distribution of money made to the shareholders of a corporation, which in the year prior *183 to the distribution was an electing small business corporation but which in the year of the distribution had terminated its Subchapter S election. The issue is whether that distribution is a tax-free distribution of previously taxed "undistributed taxable income" of the electing small business corporation or a distribution out of earnings and profits taxable to petitioners as a dividend to the extent of the current earnings and profits of the corporation during the year of the distribution. This depends upon the applicability of section 1375(f). [4]
*184 Section 1375(f)(1) provides, in pertinent part, that: Any distribution of money made by a corporation after the close of a taxable year with respect to which it was an electing small business corporation and on or before the 15th day of the third month following the close of such taxable year to a person who was a shareholder of such corporation at the close of such taxable year shall be treated as a distribution of the corporation's undistributed taxable income for such year, to the extent such distribution (when added to the sum of all prior distributions of money made to such person by such corporation following the close of such year) does not exceed such person's share of the corporation's undistributed taxable income for such year. Any distribution so treated shall, for purposes of this chapter, be considered a distribution which is not a dividend, and the earnings and profits of the corporation shall not be reduced by reason of such distribution. [5]
Further, section 1.1375-6(a)(1), Income Tax Regs. *185 , provides, in part, that: A distribution may be treated as a nondividend distribution pursuant to section 1375(f) even-though the corporation's election was terminated under section 1372(e) for the taxable year during which the distribution is made, if the corporation was an electing small business corporation for its immediately preceding taxable year. Thus, the fact that Beefeaters terminated its Subchapter S election for 1976, the year in which the distribution occurred, has no bearing on the applicability of section 1375(f) to this case, since Beefeaters was a Subchapter S corporation for 1975, the year immediately preceding that in which the distribution occurred. Petitioners contend they have met the requirements of section 1375(f) and are therefore not required to include any of the money distributed to them in their income as a dividend for 1976. Petitioners concede that the "actual" distribution did not occur until April 2, 1976, more *186 than two and one-half months after the end of their 1975 calendar year (March 15, 1976). However, petitioners contend the facts of this case justify a holding that they were in "constructive receipt" [6] of the declared dividend as of March 13, 1976, prior to the expiration of the two and one-half month grace period. Petitioners contend that constructive receipt of the distribution is sufficient to satisfy section 1375(f) and that actual distribution is not required. *187 Respondent, on the other hand, contends that constructive receipt is insufficient under section 1375(f). Respondent asserts that only an actual distribution of money satisfies section 1375(f). Therefore, since the actual distribution did not occur within the two and one-half month grace period, the tax consequences of the distribution must be determined under Subchapter C of the Code since Beefeaters had terminated its status as a small business corporation, effective January 1, 1976. We agree with respondent. The issue of whether the doctrine of constructive receipt may be utilized to satisfy the time limitations of section 1375(f) has been raised in this Court before. In Stein v. Commissioner,65 T.C. 336 (1975), we expressly held that section 1375(f) requires an actual distribution of money within the two and one-half month time period. [7] In Stein, we stated (65 T.C. at 342) that: In our opinion section 1375(f) mandates that any distribution made within 2 1/2 months of the close of the taxable year * * * be actually distributed in money, rather *188 than merely reflected in the books of the corporation, in order to constitute a distribution of "undistributed taxable income." * * * The fact that the doctrine of constructive receipt might, in the proper circumstances, [8] be applicable to the distribution for other purposes is simply insufficient to satisfy the limited relief provisions of section 1375(f). As we further stated in Stein v. Commissioner,supra,65 T.C. at 341: * * * the fact that income may be realized under the doctrine of constructive receipt, in accordance with section 1.451-2(a), Income Tax Regs., may not result in an actual distribution of money as required by section 1375(f) and the regulations governing the applicability of that section. No argument has been advanced by petitioners that would persuade us to overrule Stein. We note that other courts have also reached the conclusion that only an actual distribution of money within the two and one-half month time period is sufficient under section 1375(f). See Attebury v. United States,430 F. 2d 1162 (5th Cir. 1970); McKelvy v. United States,201 Ct. Cl. 557, 478 F. 2d 1217 (1973). *189 Petitioners have cited several cases which they feel support their proposition that section 1375(f) can be satisfied by the doctrine of constructive receipt. However, a careful reading of those cases reveals they support our conclusion that only actual distributions are sufficient. White v. Commissioner,61 T.C. 763 (1974), does not, as petitioners contend, hold that the doctrine of constructive receipt may be used to satisfy section 1375(f). Rather, that case holds merely that the constructive receipt doctrine is sufficient for purposes of section 267, a provision applicable to corporations in general, and not just small business corporations, such as section 1375(f). In fact, the case expressly recognizes that section 1375(f) may be satisfied only by an actual distribution within the two *190 and one-half month time period. White v. Commissioner,supra at 768-770. Petitioners also contend that McKelvy v. United States, supra, represents a case in which the court expressed a willingness to hold that the doctrine of constructive receipt could be used to satisfy section 1375(f), but failed to so hold only because the facts of the case did not support application of the doctrine, i.e., substantial limitations or restrictions were present. In fact, the court in McKelvy expressly recognized that section 1375(f) could not be satisfied by the doctrine of constructive receipt. McKelvy v. United States,supra,478 F. 2d at 1226-1227. The court then stated that even assuming the doctrine of constructive receipt was applicable under section 1375(f), the taxpayers had failed to establish facts sufficient to justify application of the doctrine. McKelvy,supra at 1227. Thus, McKelvy does not support petitioners' argument. Finally, petitioners cite Wallace v. Commissioner, a Memorandum Opinion of this Court, dated March 13, 1947, as authority for their position that the doctrine of constructive *191 receipt can be used to satisfy section 1375(f). However, that case stands only for the general proposition that a dividend is taxable to a cash basis shareholder when actually or constructively received.The case has no bearing whatsoever on the issue of whether the doctrine of constructive receipt is sufficient to satisfy section 1375(f). In fact, that case was decided long before Subchapter S became a part of the Internal Revenue Code of 1954. [9]
*192 Thus, petitioners have failed to satisfy the requirements of section 1375(f), and the tax treatment of the April 2, 1976 distribution must be determined in accordance with the provisions of Subchapter C of the Code. Therefore, under sections 301 and 316, the distribution to petitioners must be treated as a dividend to the extent of the current and accumulated earnings and profits of Beefeaters. Since Beefeaters had earnings and profits of $18,899, the distribution to petitioners is a taxable dividend to that extent and that amount should have been included as such in their 1976 return. The remainder of the April 2 distribution is to receive the proper treatment under section 301(c)(2) and (3) as a return of capital reducing the basis of their stock or as gain from the sale or exchange of property to the extent that it exceeds the adjusted basis of their stock. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the year at issue. ↩
2. Petitioners initially claimed attorney's fees, but the matter was not briefed to the Court. We assume that petitioners have conceded the issue. It is clear that this Court has no authority to grant attorney's fees or costs in this case. McQuiston v. Commissioner,78 T.C. 807 (1982), affd. without published opinion 711 F. 2d 1064 (9th Cir. 1983). We note that under the terms of new section 7430, added to the Code by section 292(a) of Pub. L. 97-248 (1982), 96 Stat. 324, 572; 1982-2 C.B. 462, 546-547. We now have authority to award reasonable litigation costs to a "prevailing party" in proceedings commenced in this Court after February 28, 1983. See also Rules 230-233, Tax Court Rules of Practice and Procedure.↩
3. The parties disagree as to the date on which the dividend was declared. Petitioners contend that the dividend was declared at a board of directors' meeting held at petitioners' residence in December of 1975. However, no formal record was made of such meeting. Respondent contends the dividend was not declared until a special board of directors' meeting held on March 30, 1976, which would be too late for purposes of section 1375(f)↩. Formal minutes were recorded for a meeting held at petitioners' home at 8:00 a.m. "on the thirtieth day of March, 1976." Those minutes were signed by petitioner Carmen L. Price who did not appear at the trial. Petitioner Samuel L. Price testified that the date was a "typographical error" and that the meeting actually occurred on March 13, 1976, which he remembered because of a meeting with the accountant in connection with the preparation of the corporation's tax return. The record does not show when Beefeaters' Form 1120S for 1975 was filed. However, due to our disposition of this case, it is unnecessary to decide the exact date on which such the dividend was declared.
4. Generally speaking, distributions of money made by a Subchapter S corporation are treated the same as those by a Subchapter C corporation: the distributions are dividends to the extent of current and accumulated earnings and profits, with current earnings and profits deemed to be first distributed. See sections 316; 1.1373-1(d), Income Tax Regs. However, in the case of a Subchapter S corporation with "undistributed taxable income," defined in section 1373(c), two exceptions exist. These exceptions, when applicable, change the order of the source of the distributions, and may allow the distribution or some part thereof to avoid dividend treatment, with the concomitant tax consequences provided by section 301(c)(2) and (3). The first exception is found in section 1375(d) and the regulations promulgated thereunder. When applicable, section 1375(d) changes the order of the source of the distribution so that distributions are deemed to first come out of current earnings and profits, then out of "previously taxed undistributed taxable income" to the extent thereof, with only the remaining portion of the distribution deemed to come out of accumulated earnings and profits. See section 1.1375-4(d), Income Tax Regs. Thus, section 1375(d) allows a return of capital prior to exhaustion of the accumulated earnings and profits of the corporation. However, if the election to be taxed as a small business corporation is terminated, as occurred in this case, section 1375(d) becomes inapplicable to the "previously taxed undistributed taxable income" of taxable years prior to the termination. The second exception is found in section 1375(f), and goes one step further than the section 1375(d) exception. When applicable, section 1375(f) changes the order of the source of distribution so that any actual money distributions are deemed to come first out of "previously taxed undistributed taxable income" for the immediately preceding taxable year, and only the remaining portion to come out of current and accumulated earnings and profits, in that order. See sections 1.1373-1(d) and 1.1375-4(b), Income Tax Regs. Thus, section 1375(f) allows a return of capital prior to exhaustion of either current or accumulated earnings and profits. See generally Clark v. Commissioner,58 T.C. 94 (1972); Goodale v. Commissioner,T.C. Memo. 1981-397↩.
5. The Subchapter S Revision Act of 1982 significantly altered the rules applicable to electing small business corporations. See Pub. L. No. 97-354, 96 Stat. 1669. The new rules are effective generally for tax years beginning after 1982.↩
6. The doctrine of constructive receipt is found in section 1.451-2(a), Income Tax Regs.That section provides in part that: Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions. * * *↩
7. See also Goodale v. Commissioner,T.C. Memo. 1981-397↩. 8. In reaching our decision herein that section 1375(f)↩ requires an actual distribution, rather than constructive receipt of the distribution, we express no opinion on whether the facts of this case would support a holding that petitioners were in constructive receipt of the declared dividend.
9. Subchapter S, sections 1371-1377, was added by Pub. L. 85-866 (1958), 72 Stat. 1606, 1650-1656; 1958-3 C.B. 254, effective for taxable years beginning after December 31, 1957. Section 1378 was subsequently added by section 2(a) of Pub. L. 89-389 (1966), 80 Stat. 111, 113-116; 1966-1 C.B. 419, 421-424, effective with respect to taxable years of electing small business corporations beginning after April 14, 1966, but not with respect to sales or exchanges occurring before February 24, 1966. Likewise, section 1379 was subsequently added by section 531(a) of Pub. L. 91-172 (1969), 83 Stat. 487, 654-656; 1969-3 C.B. 10↩, 107-109, effective for taxable years of electing small business corporations beginning after December 31, 1970.